## ENGLISH v. MITCHELL CATTLE COMPANY.

Contract — Services — Evidence.

1. . Under certain circumstances, when one person has conferred upon another benefits, in the way of property, services, etc., and can not show a promise in fact by the latter to pay for them, the law will create a promise, because of the receipt of the benefits, to pay what they are reasonably worth.

2. Defendant's cattle having during several years run upon plaintiff's range, and been cared for by the latter for a stipulated annual compensation; the former informed plaintiff by letter that he had leased the cattle to M. and requested plaintiff to assist M. in gathering the cattle. Plaintiff's manager testified, in a suit brought against defendant for the value of the services in gathering said cattle, that M. came to plaintiff's ranch and stated that he hoped plaintiff would assist in gathering the cattle as requested by defendant, and that defendant would pay for such services, which testimony was objected to as hearsay. *Held*, that the same was not hearsay, as the statement of M. was not as to what defendant said, but what he would do.

3. Defendant, whose cattle had for some time been cared for upon plaintiff's range by the latter for a stipulated compensation, informed the latter, by letter, that he had leased the cattle to M. for a term of years, to be removed to Nebraska, and requested plaintiff to assist in gathering the cattle; and later, by letter, in reply to a written communication from plaintiff, stated that the cattle were to be gathered at M.'s expense. Subsequently M. appeared at plaintiff's ranch to gather the cattle, with an insufficient outfit, and requested plaintiff to assist, stating that defendant would pay for the services, and the value thereof was then agreed upon between M. and the plaintiff. The plaintiff then gathered the cattle, M.'s men holding them after they were gathered. While

plaintiff was gathering the cattle, defendant was, part of the
time, present, and although he remained in the background,
he was informed and had actual knowledge of the services
being rendered by plaintiff, and he was also present and was
consulted when plaintiff's representative demanded a receipt
for the cattle, and he had the cook sign the same in the name
of M. The evidence showed that the cattle could not have
been gathered with the facilities M. had, and without the
services of plaintiff. Defendant proved a contract with M.
providing that the latter should gather the cattle at his own
expense, but plaintiff was not a party to that contract.   *Held*,
that the services of plaintiff were performed for defendant,
and a contract on the part of defendant to pay therefor would
be implied.

[Decided December 17, 1898.]

ERROR to the District Court, Laramie County. HON.
JOSEPH L. STOTTS, Judge of the Fourth District, presiding.

The case is fully stated in the opinion.

*Moore & Wellnitz*, for plaintiff in error.

The trial court erred in admitting in evidence the con-
versation between the witness, Mitchell, and one McFall.
It was inadmissible as hearsay. (1 Greenleaf on Ev. 99,
124.) It is immaterial to any issue in the case. McFall
is not sued, and unless it can be shown that he was acting
as agent for the defendant, it makes no difference what
he said to Mitchell. There is no evidence that he was
acting as such agent.

To create a contract there must be an acceptance as well
as an offer. (Clark on Contracts, 34.) It is clearly to be
seen from the letters passing between English and Mitch-
ell, that there was no contract for the gathering of the
cattle, but an express rejection of it on the part of Eng-
lish. An offer can not be made in such terms that an
acceptance will be assumed without communication. (1
Beach on Modern Law of Contracts, 46; Story on Con-
tracts, 377–78; McKinney v. Watkins, 13 Ill., 143.) To
enable the Cattle Company to recover for the services

from English, it must have been shown that the services were performed at his request. (Edwards v. Block, 73 Ga., 450; Bartholomew v. Jackson, 20 Johns., 28.) Contracts can not arise from the action of one party alone where the others have no power to prevent his action. (Thornton -v. Sturgis, 38 Mich., 639.) In order to constitute an implied contract there must be a tacit consent of the parties to it, the law implying the consent from the acts of the parties.

*E. W. Mann*, for defendant in error.

It should be borne in mind that the cattle, over which the controversy arises, had been in the possession of the defendant in error, or its predecessors in interest, for a number of years, and it is contended that the defendant in error would not have been justified in turning those cattle loose, or failing or refusing to exercise any care in regard to them, after the time for which it last received compensation for the care of said cattle had expired, but, as shown by the testimony of Mr. Mitchell, it was understood to be the custom of the country that in the case of a man taking cattle to run for a year, those cattle remained in his custody until he was requested to turn them over, and until he does turn them over; and in this case, if, after what Mr. English terms the season of 1896 had expired, the Mitchell Cattle Company had given his cattle no further attention, had not driven them back to the home range when they wandered away, had not gathered them when on the round-up, and had failed to brand the calves; and by reason of such action a large number of the cattle had been lost or stolen, then Mr. English would undoubtedly have undertaken to have held the Mitchell Cattle Company responsible for the loss which he might have sustained, if such action or lack of action on its part had been resorted to.

"Under certain circumstances, when one person has conferred upon another benefits in the way of property, services, etc., and can not show a promise in fact by the

latter to pay for them, the law will create a promise, because of the receipt of the benefits, to pay what they are reasonably worth.'' (3 Ency. of Law, 1st ed., 860, 861; 7 id. 2d ed., 91, 92; Anderson's Dict. of Law, 248; 1 Addison on Contracts, 55; 3 id., 491; 1 Beach on Modern Law of Contracts, 22, note 1, p. 24, note 1, p. 772; note 5, pp. 772, 773, note 3, p. 773 ; Keener on Quasi-Contracts, pp. 16, 24, 354, 355, and 356; Hertzog v. Hertzog, 29 Pa. St., p. 465; People v. Speir, 77 N. Y., 144; Sceva v. True, 53 N. H., 627; Milford v. Com., 144 Mass., 65; Day v. Caton, 119 Mass., 513; Ogden v. Saunders, 12 Wheat., 213, 341; Turner v. Jones, 1 Lans. (N. Y.), 147; Clark on Contracts, 777.)

Even if this court should be of the opinion that if the case had originally been heard before it, it would have arrived at a different conclusion from that arrived at by the District Judge before whom the case was tried, yet this court will not set the decision of the District Court aside unless it is clearly against the weight of evidence, or not sustained by sufficient evidence. (Rainsford v. Massengale, 5 Wyo., 1; Edwards v. Murray, 5 Wyo., 153.)

KNIGHT JUSTICE.

This action was originally brought in attachment by defendant in error in justice court upon the claim or cause of action,— 1st, care and keeping of divers cattle belonging to said James English in the sum of one hundred dollars; 2d, for work and labor performed by said Mitchell Cattle Company and its employees, and for use of horses and wagons used in gathering said English cattle in the sum of fifty dollars.

The justice, after hearing the evidence, gave judgment for $100 in favor of the defendant in error and against plaintiff in error, from which judgment plaintiff in error appealed to the district court, where, after trial *de novo*, said judgment was affirmed, and the case is brought to this court on error.

The facts as shown by the record are in substance as follows: James English, the plaintiff in error, was the owner of a small herd of cattle branded ⫴ (seven box V quarter circle), and being a non-resident of Wyoming had handled these cattle by contracting annually with various parties occupying a certain range, that for the sum of two hundred dollars said parties would gather and ship all marketable (or fat) cattle bearing said brand to a certain firm doing business in Chicago, Illinois, and Omaha, Nebraska, and brand the increase of said herd, the consideration two hundred dollars to be paid out of the proceeds of sale of such cattle so shipped, and by said firm so receiving said cattle. Under such, or a similar agreement, said brand of cattle had been run or cared for during a period of eight years or more, and until 1895, when George Mitchell, defendant in error, came into possession of the range where said cattle run, and the H R brand of cattle with which the English cattle had run and been cared for.

On the 31st day of May, 1895, said Mitchell and said English entered into an agreement such as above described for the season of 1895. In 1896, such agreement was acted upon for the season of 1896 without renewal except by mutual understanding. On April 19, 1897, said George Mitchell wrote to English as follows: "Do you want me to run your cattle for you again this summer? If so, please let me know sometime soon, as we intend doing a little work first of next month." Receiving no reply, and as he testifies believing himself in duty bound, said Mitchell (with the other employees of said Mitchell Cattle Company who had succeeded to the interests of said Mitchell in said range and H R brand of stock) proceeded to tend, care for, and brand the cattle belonging to English, until May 24, 1897, or possibly a day or two later, when said Mitchell Cattle Company and George Mitchell received the following information by letter addressed to both, and of date last aforesaid: "You will turn the ⫴ cattle over to L. N. Mc Fall, or his rep.,

Grant Halstead, and assist him in gathering the same what you can, as I have leased the same to him for a term of years to be removed to the Sand Hills in Nebraska. The deal is made and contract signed, and it will oblige me very much for you to assist Halstead in gathering the same. Will send an order to Grant Halstead by the same mail for the cattle." On May 26, 1897, George Mitchell, as manager, replied as follows to English: "Your favor requesting me to assist in the gathering of your 7V cattle just received. We have just finished working the range, and had we known in time could have gathered your cattle. If you still wish us to gather them for you, or assist in doing so, you will require to pay us for the full year as heretofore our $200. Your cattle are mostly on our range, but it would take several months to get a clean gather on them, and this can not be done without considerable outlay on our part." In reply and within a short time said Mitchell received from said English the following: "Yours of the 26th at hand and in reply to same 7V cattle are gathered at the expense of the lessor and not at mine, so should you assist in gathering said cattle you will have to make arrangements with Mr. Halstead for the same, and collect of him, as I have nothing to do with gathering said 7V cattle. When I spoke to you about assisting in gathering, I intended for you to allow them to work with your outfit on range peaceable and quiet, that is all." Some time later, about June 19, 1897, a colored man named Harrison appeared at the Mitchell ranch and reported that Mr. Mc Fall with an outfit (of which he was one) were camped down the river and sent over for the purpose of gathering seven box V cattle, and that owing to the fact that all the parties connected with the outfit were strangers in the county, and not familiar with the range, that they hoped he (Mitchell) would assist them in gathering the cattle. Mitchell then asked who was to pay for the services already performed for English and for the additional work requested, and was told that Mc Fall would come up and make arrangements    And

afterward on the same day Mc Fall came to the Mitchell
ranch with the outfit, which is described as wholly unfit for
the work upon which they were about to engage, there
being but the two men, Mc Fall and Harrison, and "three
or four boys, quite young boys," a few head of horses,
one work team where two was required, and a wagon that
broke down afterward and was replaced by Mitchell, and
a lack of saddles, ropes, and cooking utensils, the evidence
showing that the cattle could not have been gathered with
the facilities there at hand.   Under such conditions the
trial court admitted the statements then made by Mc Fall
over plaintiff in error's objection, which were in substance
that he, Mc Fall, hoped Mitchell would render every assist-
ance he could as requested by English, that they were
short of horses, men, and other things necessary to round
up and gather the cattle, and that English would pay for
such services, and the sum of one hundred dollars was
agreed upon as the amount to be paid by English.   The
objection of plaintiff in error to this evidence was on the
ground that it was hearsay, which was not good, as no evi-
dence was admitted over objection as to what English or
any one else said, but as to what English would do.   The
Mitchell Cattle Company, upon representations so made,
furnished a team, harness, five men, forty saddle horses, a
wagon, and gathered the cattle of English, the testimony
showing that Mc Fall, Harrison, and the boys held the cat-
tle together after they were gathered.   The record shows
services in detail, and shows that at the trial in district
court plaintiff in error admitted the services were rendered,
and that they were of the value stated, but denied liability
of English.   The record shows that during the time said
services were being rendered, and while the cattle were
being gathered and driven from Uva to Fort Laramie, for
two or three days plaintiff in error was with the wagon,
and while apparently keeping in the background, was
informed and had actual knowledge of the services being
rendered by the defendant in error and its servants in
connection with the gathering of his cattle; and when the

representative of the Mitchell Cattle Company demanded a receipt for the cattle so gathered and turned over, plaintiff in error was present and was consulted, and the receipt was signed by the colored man Harrison, who had acted as cook after said receipt had been amended so as to show that McFall instead of English received the cattle.

The question here to be determined is whether or not the district court committed error in fixing liability upon plaintiff in error by reason of the foregoing facts. Having admitted that services of the value claimed were rendered, but denying liability, plaintiff in error stands upon the one proposition that no contract (the contrary seeming to have been the contention of defendant in error) existed whereby James English became at any time chargeable for the services rendered, and while the various definitions of contract as set forth by plaintiff in error, and the necessity of acceptance, meeting of minds, mutuality etc., as set forth in plaintiff in error's brief, is, as claimed, elementary; it is also true that "under certain circumstances when one person has conferred upon another benefits in the way of property, services, etc., and can not show a promise in fact by the latter to pay for them, the law will create a promise, because of the receipt of the benefits to pay what they are reasonably worth." Clark on Contracts, 707, par. 318.

In Day v. Caton, 119 Mass., 513, the court says: "The fact that the plaintiff expected to be paid for the work would certainly not be sufficient of itself to establish the existence of a contract, when the question between the parties was whether one was made. Taft v. Dickinson, 6 Allen, 553. It must be shown that in some manner the party sought to be charged assented to it. If a party, however, voluntarily accepts and avails himself of valuable services rendered for his benefit, when he has the option whether to accept or reject them, even if there is no distinct proof that they were rendered by his authority or request, a promise to pay may be inferred. Abbot v. Hermon, 7 Greenl., 118; Hayden v. Madison, 7 Greenl., 76." And

further in the same opinion the court says: " If a person saw day after day a laborer at work in his field doing services, which must of necessity enure to his benefit, knowing that the laborer expected pay for his work, when it was perfectly easy to notify him if his services were not wanted, even if a request were not expressly proved, such a request, either previous to or contemporaneous with the performance of the services, might fairly be inferred.   But if the fact was merely brought to his attention upon a single occasion and casually, if he had little opportunity to notify the other that he did not desire the work and should not pay for it, or could only do so at the expense of much time and trouble, the same inference might not be made.   The circumstances of each case would necessarily determine whether silence with the knowledge that another was doing valuable work for his benefit, and with the expectation of payment, indicated that consent which would give rise to the inference of a contract.   The question would be one for the jury, and to them it was properly submitted in the case before us."

In the case of Guild v. Guild, 15 Pick., 131, Chief Justice Shaw says: " Those (speaking of his associates) who think that the law raises no implied promise of pecuniary compensation, from the mere performance of useful and valuable services, under the circumstances supposed, are nevertheless of the opinion that it would be quite competent for the jury to infer a promise from all the circumstances of the case; and although the burden of proof is upon the plaintiff, as in other cases, to show the implied promise, the jury ought to be instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief, that it was the understanding of the parties that pecuniary compensation should be made for them, then the jury should find an implied promise and a *quantum meruit;* but if otherwise, then they should find that there was no implied promise. * * *   The court being all of the opinion that these are proper subjects and sources of inquiry for a jury,

I repeat that it seems unimportant, as a rule of future practice, whether the jury shall be instructed to inquire and decide upon all the circumstances of the case, whether there was an implied promise; or that proof of performance of services raises a presumption of such a promise, unless rebutted or controlled by all the circumstances of the case.''

In case of Hart v. Hart, 41 Mo., 446, the court after discussing several cases, and among them Guild v. Guild, supra, says: ''The legal principle which must control cases of this description can only be indicated. It is impossible to lay down precise or accurate rules to govern all the cases which may arise. Each case will necessarily depend on its own special circumstances. The jury having found, after considering all the circumstances, that there was an implied promise acting under what we deem a correct and proper declaration of the law, the judgment will be affirmed.''

In the case of Lewis v. Trickey, 20 Barbour, 390, the court says: '' Where one person performs labor for another, the law presumes a request and a promise to pay what such labor is reasonably worth, unless it is understood that it is to be performed gratuitously; or if it is performed under circumstances which repel the presumption of a promise that compensation shall be made.''

In the case of Schwarz v. Schwarz, 26 Ill., 83, the court says: '' Very many circumstances tending to show what the intentions of the parties were in transactions in which they may have been engaged, are often proper for the consideration of a jury. Intents must be inferred from facts and circumstances. The real object and design of parties quite often can be reached in no other way. In the absence of express proof of a contract, one may be implied from circumstances. Sometimes very slight circumstances will produce the desired effect upon the minds of a jury. At another time such is the nature of the controversy, that they must be of a stronger character to induce the mind to yield the required assent.''

In the case of Weston v. Davis, 24 Me., 375, the court says: " When one person performs services for the benefit and with the knowledge and tacit consent of another, the law implies a promise to pay a reasonable compensation for them.   Such a promise, however, is implied only when there does not appear to have been an express agreement or employment.   When two or more persons are jointly interested to have certain services performed, and one of them requested another to perform them, he may be presumed to have done it in behalf of all those interested, unless there be something to indicate a different intention."   ·

In the case of Oatfield v. Warring, 14 Johnson, 192., the court says: " A request may be inferred from the beneficial nature of the consideration and the circumstances of the transaction."   In Ogden v. Saunders, 12 Wheaton, 341, Chief Justice Marshall of the U. S. Supreme Court says: " A great mass of human transactions depend upon implied contracts, upon contracts which are not written, but which grow out of the acts of the parties.   In such cases the parties are supposed to have made those stipulations which, as honest, fair, and just men, they ought to have made.   When the law assumes that they have made these stipulations, it does not vary their contract, or introduce new terms into it, but declares that certain acts, unexplained by compact, impose certain duties, and that the parties had stipulated for their performance."

In Turner v. Jones, 1 Lansing N. Y., 149, Marion P. J. makes use of the following language: " In the absence of an express promise I understand it to be a general principle to imply a promise if the facts are such as in equity and good conscience to require a promise. Promises are implied in a large portion of the transactions of life."

In Kiser v. Halladay, Supreme Court of Oregon, 45 Pac., 761, the court says: " It is insisted that, before the defendant could be made liable for the services of plain-

tiff, they must have been performed at his request, or he must have promised to pay for them after knowledge thereof. (Several cases cited.) No recovery can be had for an act done for the benefit of another as a voluntary courtesy and without his request. This is the doctrine announced in the cases just cited, which is not only sound law, but is in consonance with good morals. But the law will imply a request on proof of certain circumstances and the beneficial nature of the services."

It is true that plaintiff in error proved a contract with Mc Fall whereby Mc Fall was bound to gather these cattle at his own expense; but the Mitchell Cattle Company was not and never became a party to that contract, and the fact that Mc Fall was unable to perform that part of his contract with English, and so stated, and that English must have had actual knowledge of that fact, is clearly shown. And that Mc Fall made a contract with the Mitchell Cattle Company representing himself as authorized to bind English, and that by reason of such contract the services charged for were performed for English, and that during a portion of the time and for several days while such services were being rendered, English was present directing and advising, is shown by the testimony and not denied; and when the services were concluded and a demand was made for a receipt showing his liability, he was consulted and sought to avoid liability by having the colored man, who acted as cook, sign for Mc Fall.

In Bradstreet Co. v. Gill, 13 Am. State, 77, the court says: "The intention of the parties it is true must control; but that intention is to be gathered from what was actually done, or agreed by the parties, not from what they may have privately meant or supposed they meant. Agency is a question of law to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood it to be or not. Their private intention will not affect it."

By agreement of the parties hereto this action was tried in the district court without the intervention of a jury, and the court very properly found for the defendant in error, and the judgment of said court is affirmed.

*Affirmed.*

Potter, C. J., and Corn, J., concur.