2005 WY 97

**Joan BAKER, an individual, as a representative shareholder, and as personal representative of the Estate of Alvin R. Baker, Appellant (Plaintiff),**

v.

**AYRES AND BAKER POLE AND POST, INC., a Wyoming corporation; Larry W. Ayres, an individual; and Karan L. Ayres, an individual, Appellees (Defendants).**

No. 04–221.

Supreme Court of Wyoming.

Aug. 22, 2005.

---

Clark D. Stith of Greenhalgh, Beckwith, Lemich, Stith & Cannon, P.C., Rock Springs, Wyoming, for Appellant. Argument by Mr. Stith.

Ford T. Bussart and William B. Payne of Bussart, West & Tyler, P.C., Rock Springs, Wyoming, for Appellees. Argument by Mr. Payne.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1] After Alvin Baker passed away, the proceeds of a life insurance policy issued in his name were delivered to the named beneficiary, his wife, Joan Baker. Mrs. Baker then sought payment from Mr. Baker's business associates, Larry and Karan Ayres, and the corporation in which he and Mr. Ayres were the sole shareholders, Ayres and Baker Pole and Post, Inc. (the Company) for the value of Mr. Baker's shares in the Company. The Ayres and the Company asserted that the proceeds of Mr. Baker's life insurance policy were intended to be applied against the value of his interest in the Company, such that Mrs. Baker was only entitled to payment of the difference between the insurance proceeds and the value of the stock.

[¶2] After the Company refused to pay Mrs. Baker the full value of Mr. Baker's shares, she brought suit in district court. On cross-motions for summary judgment, the district court ruled in favor of the Ayres and the Company and this appeal followed. We hold the Stock Purchase Agreement clearly and unambiguously required the Company to procure and own insurance on the lives of Mr. Baker and Mr. Ayres. The evidence was undisputed that the Company did not purchase and own the life insurance required by the Stock Purchase Agreement. Thus, no genuine issue of material fact existed on Mrs. Baker's breach of contract claim and she was entitled to judgment as a matter of law on that issue. However, we also find from the evidence presented that genuine issues of material fact existed on the Ayres' and the Company's claims for imposition of a constructive trust and promissory estoppel. Therefore, we hold that the district court erred in granting summary judgment as to those claims.

[¶3] Reversed and remanded.

## ISSUES

[¶4] Mrs. Baker presents seven issues for consideration:

1. Whether the district court erred by imposing a constructive trust in favor of the Corporation on life insurance proceeds from a personal life insurance policy paid to Widow Baker.

2. Whether the district court erred in finding promissory estoppel against Widow Baker where there was no promise by Widow Baker or her late husband to buy life insurance for the Corporation.

3. Whether the district court erred in finding that Widow Baker breached the provisions of a Stock Purchase Agreement where Widow Baker com-

plied with all of her obligations under that agreement.

4. Whether the district court should have granted Widow Baker's motion for partial summary judgment for breach of contract based on the Corporation's failure to pay the amounts owing to Widow Baker under the Stock Purchase Agreement.

5. Whether the district court should have granted Widow Baker's motion for partial summary judgment for anticipatory breach of contract based on the Corporation's clear and unequivocal announcement that the Corporation had no intention of paying what it owed under the Stock Purchase Agreement.

6. Whether the district court should have computed interest on amounts owing by the Corporation to Widow Baker at eight percent (8%) from October 31, 2000, the date of Mr. Baker's death, as provided in the Stock Purchase Agreement, rather than arbitrarily giving the Corporation a 61 month interest free grace period until June 2003, or, in the alternative, whether statutory interest should be imposed.

7. Whether the district court erred by granting summary judgment to the Corporation and the Ayres on causes of action for constructive trust, promissory estoppel and breach of contract where neither the Corporation nor the Ayres ever pleaded those causes of action.

The Ayres and the Company present three issues:

A. Whether the District Court correctly granted Appellees' Motion for Partial Summary Judgment enforcing the terms and conditions of a corporate Stock Purchase Agreement?

B. Whether the District Court correctly found clear and convincing evidence to establish a constructive trust upon life insurance proceeds to fund the terms and conditions of a corporate Stock Purchase Agreement?

C. Whether the District Court correctly imposed the doctrine of promissory estoppel to apply proceeds of a life insurance [policy] to fund the terms and conditions of a corporate Stock Purchase Agreement?

## FACTS

[¶ 5] On May 1, 1972, Alvin Baker and Larry Ayres formed a partnership to operate a saw mill in Mountain View, Wyoming. The partnership existed until 1993, when both men and their wives, Joan Baker and Karan Ayres,[1] formed a Wyoming corporation to operate the saw mill.

[¶ 6] In conjunction with the formation of the Company, on April 26, 1993, the Bakers and the Ayres executed a Stock Purchase Agreement which provided that they each owned half of the corporate stock and, upon the death of Mr. Baker or Mr. Ayres, the surviving shareholder would succeed to full ownership and control of the Company. In order to effectuate a buy-out of the deceased stockholder's share, the agreement provided that "the company has, or plans on procuring insurance" on the lives of both men, "which [insurance policies] will be owned by the company." The agreement further provided that upon the death of Mr. Ayres or Mr. Baker, the proceeds of the deceased's insurance policy would be used to purchase his interest in the Company. Thus, the life insurance policies procured by the Company were intended to fund a buyout in the event of the death of one of the shareholders, thus securing the surviving member's succession to sole ownership and control of all stock.

[¶ 7] In 1988, five years before the formation of the Company and execution of the Stock Purchase Agreement, Mr. Ayres procured a life insurance policy and named the partnership as beneficiary. In 1990, Mr. Baker likewise procured a life insurance policy; however, he named Mrs. Baker as beneficiary. The Company was never named beneficiary of Mr. Baker's life insurance policy, before or after execution of the Stock Purchase Agreement, and Mr. Baker never transferred or assigned his insurance policy to the Company. Additionally, the Company

---

**1.** Joan Baker and Karan Ayres are sisters.

never procured a separate insurance policy on Mr. Baker's life naming itself as beneficiary.

[¶ 8] Mr. Baker died on October 31, 2000, and Mrs. Baker received the benefits under his life insurance policy. Mrs. Baker subsequently asserted her right to the value of the Bakers' share of the corporate stock which was valued at $719,000.[2] The Ayres and the Company responded that the proceeds from Mr. Baker's life insurance policy should be applied to the redemption price of the Baker stock pursuant to the Stock Purchase Agreement. They asserted that the life insurance policy procured by Mr. Baker in 1990 was the policy procured on the life of Mr. Baker referred to in the Stock Purchase Agreement and the Bakers breached the agreement by failing to transfer the policy to the Company. They contended the life insurance policy proceeds of $500,000 should offset the $719,000 worth of stock, resulting in a payment by the Company to Mrs. Baker in the amount of $219,000.

[¶ 9] Mrs. Baker claimed she was the beneficiary under her deceased husband's life insurance policy, making the insurance company's payment of the $500,000 proceeds to her appropriate. In addition, she claimed the Company was obligated to pay her the full value of the Baker corporate stock, $719,000, pursuant to the terms of the Stock Purchase Agreement.

[¶ 10] When the Company refused to pay the entire $719,000 plus interest, Mrs. Baker filed two actions in district court. First, she filed a shareholder's derivative action to compel election of directors, allow inspection of books and records of the Company, and compel the Company to honor its obligations under the buy-out provision of the Stock Purchase Agreement. Second, she filed a complaint alleging that the Ayres and the Company breached the Stock Purchase Agreement by failing to redeem the Baker stock, repudiated the agreement when they refused to pay the full value of the Baker stock, and breached Mr. Baker's employment contract by failing to pay wages due. Mrs.

Baker also alleged Mr. Ayres breached his fiduciary duty by paying bonuses to himself each year after Mr. Baker's death and not paying equal bonuses to her. In her second complaint, Mrs. Baker also requested an accounting of partnership property.

[¶ 11] The Ayres and the Company filed answers generally denying the claims. They also filed a counterclaim for declaratory judgment, seeking a declaration of the rights and obligations of the parties under the Stock Purchase Agreement and with respect to certain corporate assets. Specifically, they sought judgment declaring: the Bakers breached the Stock Purchase Agreement by failing to effectuate a change in beneficiary on Mr. Baker's insurance policy; the Bakers held the insurance policy in constructive trust for the benefit of the Ayres and the Company; upon payment of the $500,000 policy proceeds, Mrs. Baker breached the Stock Purchase Agreement by failing to surrender her 1,000 shares of stock; and, Mrs. Baker was entitled to payment from the Ayres and the Company of $219,000 plus interest in the amount of $7,200. The Ayres and the Company also moved to consolidate the actions filed by Mrs. Baker and to deposit the amount they claimed was owed to Mrs. Baker with the clerk of court.

[¶ 12] The district court granted the motion to deposit the $219,000 plus interest with the clerk of court and consolidated the cases. The Company and the Ayres then moved for partial summary judgment on their counterclaim and Mrs. Baker moved for partial summary judgment on her claims for breach and anticipatory breach of the Stock Purchase Agreement. After a hearing, the district court denied Mrs. Baker's summary judgment motion and granted the Ayres and the Company's summary judgment motion. Based upon the arguments and evidence presented, the district court found that Mr. Ayres and Mr. Baker explicitly agreed that the insurance policies they procured in 1988 and 1990 respectively were intended to fund the buy-out provision of the Stock Purchase Agreement executed in 1993. The district

---

2. In a separate proceeding, an arbitrator determined the fair market value of the Baker shares

at $719,000 as of the date of Mr. Baker's death.

court further found that although Mrs. Baker signed the agreement without reading it, she understood that she and her husband were bound by its terms. The district court concluded that Mrs. Baker breached the Stock Purchase Agreement, imposed a constructive trust on the life insurance policy proceeds and applied them against the purchase price of the Baker stock, and applied the doctrine of promissory estoppel to deduct the amount already paid to Mrs. Baker under her husband's life insurance policy from the amount owed to her for the sale of the Baker stock under the Stock Purchase Agreement. Accordingly, the district court ordered:

1. That the proceeds of the Farmers New World Life Insurance policy upon the life of Alvin R. Baker in the amount of $500,000 are credited under the terms of the Stock Purchase Agreement to the amounts owed [Mrs. Baker] for the redemption of her stock in [the Company.]

2. That the Uinta County Clerk of District Court shall pay to [Mrs. Baker] from funds previously deposited with this Court, the sum of $219,000, together with interest thereon at 8% per annum from June 3, 2003, to November 10, 2003, in the amount of $7,200.

[¶ 13] Following the district court's ruling, the parties filed a joint motion for a determination under W.R.C.P. 54(b) that there was no just reason for delay and final judgment should be entered. The district court entered an order pursuant to Rule 54(b) and this appeal followed.[3]

## STANDARD OF REVIEW

[¶ 14] We review orders granting summary judgment according to the following standards:

3. W.R.C.P. 54(b) provides:
 *Judgment upon multiple claims or involving multiple parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the

Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Finch v. Farmers Co–Op Oil Co.*, 2005 WY 41, ¶ 7, 109 P.3d 537, ¶ 7 (Wyo.2005) (citations omitted).

## DISCUSSION

[¶ 15] Mrs. Baker argues error in the imposition of a constructive trust, the application of promissory estoppel, and the failure to find that the Ayres and the Company breached the Stock Purchase Agreement. The Ayres and the Company respond that the district court properly concluded Mrs. Baker breached the agreement, imposed a constructive trust, and applied promissory estoppel. We begin with consideration of the breach of contract claims.

### 1. Breach of Contract

[¶ 16] In its order, the district court found that:

Joan Baker signed the Stock Purchase Agreement without reviewing it. She nonetheless understood that Alvin was bound by its terms and she was, likewise, bound by its terms. Alvin Baker informed his wife of the buyout provision and that it was to be funded with life insurance.

entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The court ultimately found that Mrs. Baker signed the agreement, was bound by its terms, and breached the agreement. Implicit in the court's ruling is the conclusion that no genuine issues of material fact existed and the Ayres and the Company were entitled to judgment as a matter of law.

▰ [¶ 17] In determining whether the district court erred in concluding Mrs. Baker breached the Stock Purchase Agreement, we apply our established rules of contract interpretation.

[O]ur basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. We must determine intent, if possible, from the language used in the [contract], viewing it in light of what the parties must reasonably have intended. The nature of our inquiry depends upon how clearly the parties have memorialized their intent. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document.

We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. The parties to an insurance contract are free to incorporate within the [contract] whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the [contract]. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. Whether a contract is ambiguous is a question for the court to decide as a matter of law.

A contract is ambiguous if indefiniteness of expression or double meaning obscures the parties' intent. Ambiguity cannot be created by the subsequent disagreement of the parties regarding the meaning of a contract. If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to determine the parties' intent. Reviewing courts are free to make a determination as to the existence of ambiguity whether or not the parties agree one way or the other and whether or not the trial court has reached a conclusion one way or the other.

*Principal Life Insurance Co. v. Summit Well Service, Inc.,* 2002 WY 172, ¶¶ 17–19, 57 P.3d 1257, ¶¶ 17–19 (Wyo.2002) (citations omitted).

▰ [¶ 18] Mrs. Baker argues that application of these rules requires us to consider first the four corners of the contract and, if no ambiguity is found, look no further. Mrs. Baker argues the Stock Purchase Agreement unambiguously states that "the company has, or plans on procuring insurance upon the lives of Larry W. Ayres and Alvin R. Baker, which will be owned by the company." Asserting that the only life insurance policy on her husband's life was the Farmers policy, which was owned and procured by him, and there was no insurance policy on his life procured or owned by the Company, Mrs. Baker contends she was entitled as a matter of law to both the proceeds of the Farmers policy ($500,000) and payment for the full value of the Bakers' stock in the Company ($719,000), for a total of $1,219,000, plus interest.

[¶ 19] The Ayres and the Company respond that the district court correctly found Mrs. Baker signed the Stock Purchase Agreement and was bound by its terms whether she read it or not. They also assert the district court correctly found that Mr. Ayres and Mr. Baker intended the policies procured in 1988 and 1990 to fund the buyout provision of the Stock Purchase Agreement. Because the agreement provided that the life insurance policy proceeds would be used to fund a buyout of Mr. Baker's stock after his death, they assert, the district court also correctly concluded Mrs. Baker breached the agreement by not accepting the difference in value between the insurance proceeds and Mr. Baker's share of the stock as payment for the buy-out and instead asserting a right to both the insurance proceeds and the full value of Mr. Baker's stock.

[¶ 20] Before consideration of the Stock Purchase Agreement, we consider the Farmers insurance contract, looking to the printed policy itself, the application for insurance and any policy amendments. *Principal Life Ins. Co.,* ¶ 22. The insurance application lists Mr. Baker as the owner and applicant and Mrs. Baker as the beneficiary. The Bakers' chil-

dren are listed as contingent beneficiaries. The policy provides that the beneficiary may be changed by signed request of the owner. No request for change of beneficiary signed by Mr. Baker appears in the record. Looking at the four corners of the life insurance policy, the document unambiguously provides that Mrs. Baker was the intended beneficiary of the policy proceeds. Thus, as a matter of law Mrs. Baker was entitled to payment of the $500,000 benefits payable under the policy.

[¶ 21] Three years after the policy took effect, however, the Ayres and the Bakers entered into an agreement—the Stock Purchase Agreement—which provided in relevant part as follows:

WHEREAS, the Shareholders own capital stock of [the Company], a Wyoming Corporation, with principal office located at Mountain View, Wyoming, as follows:

Alvin R. Baker and Joan E. Baker 1,000 shares

Larry W. Ayres and Karan L. Ayres 1,000 shares

and

WHEREAS, the Shareholders do desire to limit new shareholders; and

* * *

WHEREAS, the Shareholders realize that in the event of the death of either of them, or the sale of their stock during their life, should the stock in the corporation owned by such Shareholder pass into the ownership or control of a person other than the remaining Shareholder it would tend to disrupt the harmonious and successful management and control of the corporation; and

* * *

WHEREAS, *the Shareholders desire to facilitate liquidation of the stock of a deceased Shareholder by the creation of a guaranteed market for their stock at a fair value;* and

WHEREAS, *the Shareholders desire to use life insurance to help achieve these objectives;* and

* * *

NOW, THEREFORE, in consideration of the premises, the mutual promises here-inafter made, and other good, valuable and sufficient consideration the parties hereto do execute this Stock Purchase Agreement and do mutually promise each other:

* * *

3. *Purchase of Stock on Death.*

(a) *Redemption by Company.* Except as provided in paragraph 3(b), **upon the death of any shareholder, their estate shall sell and the Company shall redeem all of the Shareholder's stock in the Company.** ...

* * *

10. *Insurance Provision.* In order to assure that all or a substantial part of the purchase price for the shares of a deceased shareholder will be available immediately in cash upon their death, **the Company has, or plans on procuring insurance** upon the lives of Larry W. Ayres and Alvin R. Baker, **which will be owned by the Company, the proceeds of which will be used to purchase said deceased shareholder's interest.** The value of the deceased shareholder's stock shall be set as provided herein and the proceeds of said policy are not included in the value of the company under the terms of this agreement, but are to be used to pay for the deceased shareholder's stock and this agreement shall be effective as fixing the value of the business interest for estate tax purposes for all of the shareholders of the corporation. The parties agree that the stock is jointly owned as set forth in the Agreement and **in the event of either Larry W. Ayres or Alvin R. Baker's death, their spouse agrees to sell her interest to the surviving shareholder, pursuant to this Agreement.**

(emphasis added.) The agreement was signed by Mr. and Mrs. Ayres and Mr. and Mrs. Baker.

[¶ 22] Looking at the four corners of the document, the Stock Purchase Agreement clearly and unambiguously provides that *the Company* has purchased or will purchase insurance on the lives of Mr. Ayres and Mr. Baker. The agreement further provides that *the Company* will own the insurance and that, in the event of a shareholder's death,

**1242**

the proceeds of the policy on his life will be used to purchase his interest in the Company. From the four corners of the document, it is clear as a matter of law that the agreement required the Company to purchase and own insurance on the lives of Mr. Ayres and Mr. Baker, the proceeds of which would be used to buy out their interest in the Company upon their death.

[¶ 23] Having concluded as a matter of law that the Stock Purchase Agreement required the Company to procure and own insurance on the lives of Mr. Ayres and Mr. Baker, we consider whether genuine issues of material fact existed on the question whether the Company breached the agreement by failing to comply with the insurance provision. No evidence was presented that the Company purchased and owned the life insurance required by the Stock Purchase Agreement. Thus, no genuine issue of material fact existed on Mrs. Baker's breach of contract claim and she was entitled to judgment as a matter of law on that issue.

[¶ 24] Our conclusion that the Company breached the agreement by failing to procure life insurance as required does not end the inquiry. The Ayres and the Company asserted, and the district court held, that the equities of this case supported imposition of a constructive trust or application of the doctrine of promissory estoppel. We turn to consideration of whether summary judgment was appropriate on these claims.

### 2. Constructive Trust and Promissory Estoppel

[¶ 25] After concluding that Mrs. Baker breached the Stock Purchase Agreement as a matter of law and that summary judgment was appropriate on the Ayres' contract claim, the district court imposed a constructive trust and invoked the doctrine of promissory estoppel to apply the insurance policy proceeds Mrs. Baker already received against the amount the Ayres and the Company owed to her for purchase of her share of the corporate stock. Like the district court's ruling on the breach of contract claim, these determinations were made on the Ayres' motion for summary judgment. Implicit in the court's ruling, therefore, is the

conclusion that no genuine issues of material fact existed on the claims for constructive trust and promissory estoppel and the Company was entitled to judgment as a matter of law. We disagree.

[¶ 26] A constructive trust arises by construction of the court when equity so demands. *Rossel v. Miller*, 2001 WY 60, ¶ 13, 26 P.3d 1025, ¶ 13 (Wyo.2001). It is an equitable remedy imposed to compel a person who unfairly holds a property interest to hold property in trust for the person for whom in equity and good conscience it should be held. *Id.* To warrant imposition of a constructive trust, the following elements must be proven: a promise, either express or implied; a transfer made in reliance on that promise; and unjust enrichment. *Id.*

> "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

*Id.,* ¶ 19.

[¶ 27] The Ayres presented substantial evidence to support their claim for imposition of a constructive trust. They showed that during the existence of the partnership, before the business was incorporated, Mr. Ayres procured an insurance policy on his life and named the partnership as the beneficiary. Mr. Ayres testified he named the partnership as the beneficiary on his policy because he and Mr. Baker had agreed they each would procure individual policies naming the partnership as beneficiary.

[¶ 28] At the time the business was being incorporated, the parties discussed with their attorney the idea of using Mr. Baker's and Mr. Ayres' existing life insurance policies to fund the buy/sell agreement. Corporate counsel testified that he understood from these discussions that the policies pre-existed the Company, were in the partnership name or were being paid for by the partnership, and were going to be transferred over to the Company. He testified that it was clearly the intent of everyone involved that the assets of the partnership, including the life

insurance policies, would be transferred to the Company. He testified:

> I knew they had these policies that were on their lives and it had been my understanding that those had been funded by the partnership, so whether it was the company who owned them—I didn't know who owned them, I didn't know who the beneficiary was, I knew they had the amounts and I remember the discussion that they were going to use—those existing policies were going to be the ones that were going to fund this stock purchase agreement initially, that's what I recall.

After Mr. Baker's death, corporate counsel re-confirmed by letter his understanding of the parties' intent. He stated:

> Pursuant to the terms of [the stock purchase] agreement, the parties agreed that life insurance policies on the life of Alvin Baker and Larry Ayres would be maintained through the corporation and the proceeds of these policies would be used to partially pay for the acquisition of either Alvin or Larry's interest in the event of death. The agreement specifies that since the stock in the corporation was jointly owned, that in the event that either Alvin or Larry died, then their surviving spouse would sell to the other party their interest in the corporation pursuant to the terms of this stock purchase agreement, and that the life insurance policy would be used as the initial payment for this and would not be considered as part of the valuation of the company.
>
> I have contacted Dan Norris, who was the agent that the policy on Alvin's life was obtained through and he has advised me that the policy was owned by Alvin, and the beneficiary of the policy was Mrs. Baker. However, it is clear from the records that this policy was paid for and acquired through the company and the intent of that would have been to partially fund the stock purchase agreement.

[¶ 29] As proof that the Company paid the premiums for Mr. Baker's life insurance, the Ayres submitted copies of the Company's general ledger and cancelled checks written on its account showing premium payments to Farmers in the years 1990 and 1993 through 2000. The Ayres also submitted the testimony of insurance agent Van Johnson concerning his conversations with Mr. Baker in the course of procuring life insurance. Mr. Johnson testified Mr. Baker told him that he and Mr. Ayres had policies that would fund a buy-out of their shares in the Company in the event that one of them passed away.

> Q He made it explicitly clear to you that the purpose of the policy was to effectuate a buyout of Mr. Ayres in the event of his death; is that correct?
>
> A Yes.
>
> Q And that was, in fact, explicitly discussed between you?
>
> A Yes.
>
> Q And in fact there had been other discussions, had there not, in which Alvin remarked upon the importance of these policies for that purpose?
>
> A Yes.
>
> Q And again, how would you describe Alvin's view of the importance of these policies for the purpose of buying out a surviving partner in the entity?
>
> A He was very proud that they had that in place because not very many companies did.
>
> Q Did he remark upon what its importance was in terms of how it would affect the families in the event of a death of one of these gentlemen?
>
> A Yes.
>
> Q And what was that remark?
>
> A That the families would be adequately taken care of in case the business did not succeed.

The Ayres also submitted Mrs. Baker's deposition testimony in which she acknowledged that a couple of years before his death, Mr. Baker told her that although Mr. Ayres had been trying to get him to do so, he was not going to sign his life insurance policy over to the Company because he did not think the Company needed the insurance for the buy-out.

[¶ 30] Against this evidence, however, Mrs. Baker submitted evidence that her husband procured the Farmers' life insurance policy for two purposes: to cover his family

and an SBA loan taken out by the partnership. Mr. Baker was listed on the insurance application as the owner and Mrs. Baker was listed as beneficiary. Mrs. Baker testified that Mr. Baker told her he did not think the life insurance was intended for the buyout, the Company did not need it for the buy-out and the insurance was intended to cover an SBA loan and for the family. Mrs. Baker also testified that although the premiums for Mr. Baker's policy were paid by the business, her husband told her they were treated as part of his wages and he paid taxes on the amounts. In terms of the Stock Purchase Agreement provisions concerning insurance, Mrs. Baker testified her husband told her the Company "would probably get a smaller insurance policy than what he had" to fund the buy-out.

[¶ 31] Viewing the evidence presented in the light most favorable to Mrs. Baker, and giving to her all favorable inferences that can be drawn from the evidence, we hold that genuine issues of material fact existed on the claim for constructive trust that precluded summary judgment. Given the evidence that Mrs. Baker was listed as the intended beneficiary of the Farmers policy and that Mr. Baker told Mrs. Baker the insurance was not intended to fund the buy-out and the Company would get another policy for that purpose, we cannot conclude the evidence was so clear reasonable minds could not differ on the elements necessary to support imposition of a constructive trust. The insurance policies procured by the parties pre-existed the Stock Purchase Agreement. They were not owned by the Company nor were they procured by the Company as provided in the Stock Purchase Agreement. Corporate counsel mistakenly believed the existing insurance had been transferred to the Company when in fact it had not and was surprised to learn after Mr. Baker's death that Mr. Baker owned the policy and Mrs. Baker was the beneficiary of the proceeds. These are genuine issues of material fact precluding summary judgment. We hold the district court erred in granting summary judgment on the Ayres' claim for constructive trust.

[¶ 32] We likewise hold the district court erred in granting summary judgment on the promissory estoppel claim. The required elements of a promissory estoppel claim are: the existence of a clear and definite agreement; proof that the party urging the doctrine acted in reasonable reliance on the agreement; and the equities support the enforcement of the agreement. *Finch,* ¶ 22. Here, issues of fact existed concerning whether the parties clearly and definitely agreed that the existing insurance policies would be used to fund the buy-out; if that was the agreement, whether the Ayres reasonably relied on Mr. Baker's statements that he would transfer his policy to the Company; and whether the equities supported enforcing any such agreement.

[¶ 33] The district court's order granting partial summary judgment for the Ayres and the Company is reversed. The case is remanded for entry of summary judgment for Mrs. Baker on her breach of contract claim and for trial on the issues of whether imposition of a constructive trust or application of promissory estoppel is appropriate. If the Ayres and the Company meet their burden of proof on one or the other of these claims, Mrs. Baker will be entitled to payment of the difference between the value of the Baker stock and the life insurance proceeds. Conversely, if the Ayres and the Company fail to meet their burden, Mrs. Baker will be entitled to payment for the full value of the Baker stock.