2007 WY 185

**Joan BAKER, an individual, as a representative shareholder and as personal representative of the estate of Alvin R. Baker, Appellant (Plaintiff),**

v.

**AYRES AND BAKER POLE AND POST, INC., a Wyoming corporation; Larry W. Ayres, an individual; and Karan L. Ayres, an individual, Appellees (Defendants).**

No. 06–260.

Supreme Court of Wyoming.

Nov. 16, 2007.

Representing Appellant: Clark D. Stith, Rock Springs, Wyoming.

Representing Appellees: Ford T. Bussart, Rock Springs, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] This is a dispute over the proceeds of an insurance policy on the life of the late Alvin Baker. His widow, Appellant Joan Baker, contends that the district court misapplied claims of promissory estoppel and constructive trust when it awarded the insurance proceeds to Appellees Larry Ayres, Karan Ayres, and Ayres and Baker Pole and Post, Inc. We agree, and reverse the judgment, remanding the case to the district court for entry of judgment in favor of Ms. Baker.

### ISSUES

[¶ 2] Ms. Baker lists ten separate issues in her brief, but two of them are dispositive:

1. Whether the district court erred by invoking promissory estoppel to defeat enforcement of a contract based upon pre-contract formation events; and

2. Whether the district court erred in imposing a constructive trust.

As explained below, our decision on these two issues also resolves Ms. Baker's remaining issues.

### FACTS

[¶ 3] This case has been before us previously. The facts set forth in *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, 117 P.3d 1234 (Wyo.2005), will be summarized here. Joan Baker and Karan Ayres are sisters. Their husbands, Alvin Baker and Larry Ayres, owned and operated a successful lumber business. In 1972, they organized the business as a partnership. In 1993, they incorporated as Ayres and Baker Pole and Post, Inc. ("the Company"). The Bakers owned half of the shares as tenants by the entireties, and the Ayres owned the other half, also as tenants by the entireties.

[¶ 4] The two couples executed a Stock Purchase Agreement soon after the Company was incorporated. This Agreement provided that, upon the death of either Mr. Baker or Mr. Ayres, the Company would be obligated to purchase the widow's shares at fair market value. It further provided that:

> In order to assure that all or a substantial part of the purchase price for the shares of a deceased shareholder will be available immediately in cash upon their death, the Company has, or plans on procuring insurance upon the lives of Larry W. Ayres and Alvin R. Baker, which will be owned by the Company, the proceeds of which will be used to purchase said deceased shareholder's interest.

After Mr. Baker died in 2000, the Company was obligated to purchase Ms. Baker's shares for fair market value, which was determined by an arbitrator to be $719,000.

[¶ 5] The Company, however, never procured the life insurance policies that, according to the 1993 Stock Purchase Agreement, were meant to fund the purchase. Mr. Baker did have his own life insurance policy, but the Company was not the beneficiary. Rather, Ms. Baker was the named beneficiary, and the $500,000 proceeds were paid to her. Mr. Ayres also had his own life insurance policy. The named beneficiary of that policy was not the Company, but the partnership under which the business had operated before it was incorporated. Both men procured these policies before the Company was incorporated.

[¶ 6] The Company and the Ayres asserted that the proceeds of Mr. Baker's life insurance policy were intended to be used to purchase the Bakers' shares in the Company. By their calculation, the Company did not

owe Ms. Baker $719,000, but only $219,000, the difference between the $719,000 fair market value and the $500,000 insurance proceeds. Ms. Baker maintained that the Company owed her the full $719,000, without reduction for the life insurance proceeds, and she initiated litigation against the Company and the Ayres. The trial court ruled that Mr. Baker and Mr. Ayres had explicitly agreed that their life insurance policies would fund the buy-out provisions of the Stock Purchase Agreement. Finding that the Bakers had breached this agreement, the trial court entered summary judgment in favor of the Company and the Ayres.

[¶ 7] On Ms. Baker's appeal of that summary judgment ruling, we held that the Stock Purchase Agreement clearly and unambiguously obligated the Company to procure and own life insurance policies on Mr. Baker and Mr. Ayres, and that the Company had breached that obligation. Accordingly, we ruled that Ms. Baker was entitled to judgment as a matter of law on her breach of contract claim. *Id.*, ¶ 23, 117 P.3d at 1242. But while we resolved the breach of contract claim, we also noted that the Company and the Ayres had asserted claims of promissory estoppel and constructive trust, and found that disputed issues of material fact precluded summary judgment on those claims. Accordingly, we remanded the case for trial on the claims of constructive trust and promissory estoppel. *Id.*, ¶ 33, 117 P.3d at 1244.

[¶ 8] On remand, the district court held a bench trial. In a detailed decision containing findings of fact and conclusions of law, it ruled in favor of the Company and the Ayres on the claims of promissory estoppel and constructive trust. Ms. Baker now appeals that judgment.

## STANDARD OF REVIEW

[¶ 9] In reviewing a judgment in which the trial court has set forth findings of fact and conclusions of law, we review conclusions of law *de novo*. We review findings of fact for clear error. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Rolfe v. Varley*, 860 P.2d 1152, 1156 (Wyo.1993). When reviewing questions of law *de novo*, no deference is afforded to the decision of the trial court. *Jacoby v. Jacoby*, 2004 WY 140, ¶ 7, 100 P.3d 852, 855 (Wyo.2004).

## DISCUSSION

[¶ 10] We begin our discussion by recalling our previous ruling that the 1993 Stock Purchase Agreement clearly and unambiguously required the Company to purchase and own insurance policies on the lives of Mr. Baker and Mr. Ayres, and that the Company had breached that obligation. *Baker I*, ¶ 22, 117 P.3d at 1241–42. We also ruled that Ms. Baker was entitled to receive the proceeds of Mr. Baker's life insurance policy. *Id.*, ¶ 20, 117 P.3d at 1241. The question we remanded to the trial court was whether the Company, through application of promissory estoppel or constructive trust, was entitled to apply the insurance proceeds Ms. Baker had received against the amount the Company owed her for the purchase of her shares. *Id.*, ¶ 25, 117 P.3d at 1242. We now review the district court's ruling in favor of the Company and the Ayres, first as to promissory estoppel, and second as to constructive trust.

### Promissory Estoppel

[¶ 11] The required elements of promissory estoppel are: (1) the existence of a clear and definite agreement; (2) proof that the party urging the doctrine acted in reasonable reliance on the agreement; and (3) equities supporting the enforcement of the agreement. *Id.*, ¶ 32, 117 P.3d at 1244. In this case, the questions to be answered by the trial court were "whether the parties clearly and definitely agreed that the existing insurance policies would be used to fund the buy-out; if that was the agreement, whether [the Company and] the Ayres reasonably relied on Mr. Baker's statements that he would transfer his policy to the Company; and whether the equities supported enforcing any such agreement." *Id.*

[¶ 12] The trial court made two findings of fact relating to the existence of a clear and definite agreement. It found that:

At the April 2, 1993 meeting, [Mr. Baker] and [Mr. Ayres] explicitly stated and agreed that their existing policies were going to be used to fulfill the "plans on procuring insurance" provision of the agreement. The Stock Purchase Agreement was signed by [the Bakers] and [the Ayres] on April 26, 1993.

It also found:

that in 1988 and again in 1993 there was an express promise by [Mr. Baker] to [Mr. Ayres] to procure insurance on his life in the approximate sum of $500,000 with the partnership, and later the corporation, named as the owner and beneficiary.

Significantly, both agreements referred to by the trial court were made *before* the 1993 Stock Purchase Agreement. Our precedent is clear that promissory estoppel applies only where there is no contract. *E.g., Sowerwine v. Keith,* 997 P.2d 1018, 1021 (Wyo.2000); *Parkhurst v. Boykin,* 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo.2004). "Since promissory estoppel applies only if a contract does not exist, a promissory estoppel argument in this case, where the evidence demonstrates the existence of a contract, is incongruous." *Frost Constr. Co. v. Lobo, Inc.,* 951 P.2d 390, 397 (Wyo.1998). When the parties establish obligations by contract, those obligations should be enforced as set forth in the contract, *see, e.g., East Broadway Assocs. v. Dowell,* 2002 WY 106, ¶ 18, 49 P.3d 1004, 1008 (Wyo.2002), and promissory estoppel will not serve to substitute different or contrary obligations. Accordingly, the promissory estoppel claim asserted by the Company and the Ayres is simply not supported by findings of fact that, before the 1993 Stock Purchase Agreement, Mr. Baker made clear and definite agreements to transfer his life insurance policy to the Company. Where the express written agreement obligates the Company to procure life insurance policies, promissory estoppel does not shift that obligation to the Bakers.

[¶ 13] As the Company and the Ayres correctly assert in their brief, however, promissory estoppel may arise from the conduct of parties *after* the execution of a written contract. Parties to a written contract may agree to change that contract. In the proper circumstances, the change may be enforced through promissory estoppel. *See, e.g., Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1298 (Wyo.1995).

[¶ 14] However, the district court made no findings of fact regarding any subsequent agreement to alter the provisions of the 1993 Stock Purchase Agreement. It did recite that "in the corporate meetings in 1998, 1999 and 2000," Mr. Baker repeatedly told Mr. Ayres that the Company was the beneficiary on his policy. Considering this finding in the light most favorable to the Company and the Ayres, it indicates that Mr. Baker did not tell the truth. It does not establish any clear and definite agreement to transfer his life insurance policy to the Company, or an agreement of any sort to alter the parties' obligations under the 1993 Stock Purchase Agreement. The Company and the Ayres have not pointed to any evidence in the record indicating that any new agreement was made after the 1993 Stock Purchase Agreement, and our review of the record yielded none.

[¶ 15] In sum, the trial court's findings regarding Mr. Baker's agreements prior to the 1993 Stock Purchase Agreement do not support the promissory estoppel claim asserted by the Company and the Ayres, and there is no evidence of any subsequent agreement. Having failed to establish the existence of a clear and definite agreement, the first element of promissory estoppel, the Company and the Ayres did not sustain that claim.

## *Constructive Trust*

[¶ 16] A constructive trust is an equitable remedy imposed to compel a person who unfairly holds a property interest to hold that property in trust for the person for whom, in equity and good conscience, it should be held. *Baker I,* ¶ 26, 117 P.3d at 1242 (citing *Rossel v. Miller,* 2001 WY 60, ¶ 13, 26 P.3d 1025, 1028 (Wyo.2001)). The established elements required of a constructive trust are these: (1) a promise, either

express or implied; (2) a transfer made in reliance on that promise; and (3) unjust enrichment. *Baker I*, ¶ 26, 117 P.3d at 1242.

[¶ 17] With regard to the third element of constructive trust, unjust enrichment occurs when "a party receives something of value *without payment,* which was accepted and used so as to unjustly enrich the recipient of the goods or services." *McNeill Family Trust v. Centura Bank,* 2003 WY 2, ¶ 26, 60 P.3d 1277, 1288 (Wyo.2003) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 36, 39 P.3d 1051, 1061 (Wyo. 2002)) (emphasis added). To determine whether Ms. Baker was unjustly enriched by receiving the insurance proceeds, it is therefore necessary to determine who paid the insurance premiums. It was for that reason that our previous opinion in this case took note of evidence presented by the Company and the Ayres about the insurance payments:

> As proof that the Company paid the premiums for Mr. Baker's life insurance, the Ayres submitted copies of the Company's general ledger and cancelled checks written on its account showing premium payments to [the insurance company] in the years 1990 and 1993 through 2000.

*Baker I,* ¶ 29, 117 P.3d at 1243. We also noted Ms. Baker's evidence to the contrary:

> [A]lthough the premiums for Mr. Baker's policy were paid by the business, her husband told her they were treated as part of his wages and he paid taxes on the amounts.

*Id.,* ¶ 30, 117 P.3d at 1244. This gave rise to one of the disputed issues of material fact that prompted our remand to the trial court.

[¶ 18] At the trial on remand, the evidence was clear that Mr. Baker and Mr. Ayres paid their own insurance premiums. The checks were written on the Company account, but the parties do not dispute that the amounts were accounted for either as salary paid to Mr. Baker and Mr. Ayres, or as loan repayments to them. In practical terms, Mr. Baker and Mr. Ayres paid the insurance premiums out of their own pockets. On this point, the trial court made the following finding of fact:

From 1990 to 2000, the premiums on the policies were paid by either the partnership or the corporation. The funds for these premium payments were charged to corporate payroll between 1993 and 1996 and thereafter treated as corporate repayment to [Mr. Baker] and [Mr. Ayres] of loans made by each of them from bonus distributions received at the end of the corporate tax year.

The court's meaning here is not entirely clear. To the extent this finding was meant to indicate that Mr. Baker and Mr. Ayres did not pay the insurance premiums, it is directly contrary to the evidence, and clearly erroneous. To the extent it was meant to indicate that Mr. Baker and Mr. Ayres did pay their own insurance premiums, it is fully supported by the evidence, but it is also fatal to the constructive trust claim. Because the insurance premiums were paid by Mr. Baker, not the Company, Ms. Baker did not receive something of value without paying for it, and was not unjustly enriched. Having failed to prove unjust enrichment, the third element of constructive trust, the Company and the Ayres did not sustain their constructive trust claim.

[¶ 19] Finally, while we do not decide the matter on this basis, we do question whether the equities in this case favor any of the parties. The Company failed to procure the life insurance policies, in breach of the 1993 Stock Purchase Agreement. Mr. Baker and Mr. Ayres share the responsibility for the Company's breach. Neither Mr. Baker nor Mr. Ayres transferred his life insurance policy to the Company, or named the Company as beneficiary. It is not readily apparent that equity should enforce an obligation against the Bakers that the Ayres also failed to meet.

### Remaining Issues

[¶ 20] Ms. Baker asserts that much of the evidence introduced at trial was inadmissible under the parol evidence rule, the best evidence rule, the Dead Man's Statute, or other evidentiary directives. It is unnecessary to resolve these evidentiary issues because, admissible or not, the evidence does not support the claims of the Company and the

Ayres. Ms. Baker also contends that the trial court's findings of fact are contrary to the evidence. Again, it is unnecessary to reach this issue because the findings, even if correct, fail to support claims of promissory estoppel and constructive trust.

[¶ 21] Ms. Baker also requests that we direct the trial court to reinstate its previous judgment in favor of Ms. Baker for purposes of establishing its priority date. The record suggests that the previous judgment in favor of Ms. Baker was not vacated or otherwise disturbed, so there may be no need to reinstate it. However, the trial court is in a better position to make that determination, and may do so on remand. Further, Ms. Baker invites us to consider whether, as the prevailing party, she is entitled to recover her attorney's fees under the 1993 Stock Purchase Agreement. This, too, is a question that the trial court may consider on remand.

### CONCLUSION

[¶ 22] For the reasons discussed above, we reverse the judgment in favor of the Company and the Ayres. We remand to the trial court for entry of judgment in favor of Ms. Baker, and for such additional proceedings as may be needed to resolve this dispute.

KITE, J., dissenting.

[¶ 23] I do not agree that the district court's findings fail to support the promissory estoppel claim. The district court found that in 1988 and 1993, during his partnership with Mr. Ayres and before the partners entered into an agreement to incorporate the business, Mr. Baker made an express promise to procure insurance on his life naming the partnership as the beneficiary. Later, during discussions about incorporating the business, the partners agreed that their existing policies would be used to fund the corporation's buy/sell agreement. Evidence was presented showing that the policies predated incorporation, were in the partnership name or were being paid for by the partnership, and the partners agreed the business would be the beneficiary—all of this before the stock purchase agreement was executed.

The stock purchase agreement, which included the agreement to transfer the policies from the partners and/or the partnership to the company, was made between the stockholders of the corporation—Mr. Baker, Mr. Ayres, Mrs. Baker and Mrs. Ayres. The agreement to procure individual life insurance policies with the partnership as the beneficiary was made between Mr. Ayres and Mr. Baker. I would hold that a promissory estoppel claim based upon a prior agreement between two partners comprising a partnership is cognizable despite a later agreement between the soon-to-be shareholders to incorporate the partnership. I do not agree that the case authorities cited by the majority preclude that outcome.

[¶ 24] *Sowerwine* and *Frost* involved written agreements entered into between two parties, one of whom later claimed the written agreement omitted a provision of the parties' actual agreement. Under those circumstances, where the same parties were involved in both the written agreement and the allegedly omitted provision, we held a promissory estoppel claim was not cognizable because of the existence of the contract. In *Parkhurst*, another case involving two parties to an alleged agreement, we reiterated the rule that promissory estoppel does not apply if a contract exists. In that case, we concluded the party claiming that a contract existed failed to carry his burden of proving an oral contract sufficiently definite to avoid the statute of frauds. Having concluded no contract existed, we considered the promissory estoppel claim but found insufficient evidence to support the claim.

[¶ 25] In contrast to those cases, the present case involved two agreements—the first between two partners in which they agreed to purchase insurance naming the partnership as beneficiary, and the second between four corporate stockholders in which they agreed the corporation would procure insurance the proceeds of which would be used to fund the buy/sell provision of the stock purchase agreement. I would hold that the existence of the 1993 stock purchase agreement does not extinguish a promissory estoppel claim based on the prior partnership agreement.

[¶ 26] In *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293 (Wyo.1995), a ranch employee who was injured while performing his job elected not to undergo treatment after his employer told him the ranch's insurance would not cover him. Upon being advised later by his employer that there might be coverage after all, the employee contacted the Mountain West representative who told him to get the treatment, send in the bills and Mountain West would pay them. The employee did as he was told. Mountain West paid $5,000 but declined further payment. The employee brought claims against Mountain West based upon promissory estoppel and negligent misrepresentation theories. The district court rejected the promissory estoppel claim finding, as a matter of law, the theory would not apply to create coverage not found within the insurance contract. We agreed that estoppel would not operate to create additional insurance in an existing insurance contract. *Id.* at 1298. However, separate and apart from the insurance contract entered into between the ranch and Mountain West, we held that genuine issues of fact existed as to whether the insurance company representative's promises to the employee "resulted in the *formation* of an entirely new contract of insurance" under the theory of promissory estoppel. *Id.* We said, "[the employee] may collect upon Mountain West's promise to him to pay for his surgery and rehabilitation, provided he can make his case for that promise to a jury of his peers." *Id.*

[¶ 27] Applying this reasoning, it is clear the stock purchase agreement between the stockholders could not operate to require Mr. Baker to procure insurance on his life naming the company as beneficiary. However, notwithstanding the stock purchase agreement, I would hold that the district court's factual findings supported its conclusion that Mr. Baker's promise to Mr. Ayres resulted in an entirely separate agreement enforceable under the theory of promissory estoppel.

[¶ 28] I also disagree with the majority's conclusion that the district court erred in imposing a constructive trust. The majority's conclusion that the trial court was wrong hinges on the third element necessary for imposition of a constructive trust, i.e., unjust enrichment, which occurs when "a party receives something of value without payment, which was accepted and used so as to unjustly enrich the recipient of the goods or services." *McNeill Family Trust v. Centura Bank*, 2003 WY 2, ¶ 2, 60 P.3d 1277, 1287 (Wyo.2003). The majority concludes Mrs. Baker did not receive something of value "without payment" when she received the insurance proceeds because the evidence showed Mr. Baker paid the insurance premiums. In my view, Mrs. Baker received something of value without payment and was unjustly enriched when she received both the insurance proceeds, which were intended to fund the corporate buyout, and payment for the value of the Bakers' corporate shares.

BURKE, Justice, delivers the opinion of the Court; KITE, Justice, files a dissenting opinion.