# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 117

APRIL TERM, A.D. 2022

September 26, 2022

DELORES M. STATZER,

Appellant
(Plaintiff),

v.

S-22-0016

LONNIE D. STATZER,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
  Joshua J. Merseal, Merseal Law, LLC, Laramie, Wyoming.

*Representing Appellee:*
  Alexander K. Davison and Patrick D. Kent, Patton & Davison LLC, Cheyenne, Wyoming.  Argument by Mr. Kent.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Delores M. Statzer filed suit against her son, Lonnie D. Statzer, seeking title to a parcel of property in Laramie County he acquired when he exchanged it for a parcel of property in Carbon County—a parcel his parents deeded to him years prior.  Delores alleged claims for unjust enrichment, constructive trust, and quiet title.  Both parties moved for summary judgment.  Delores now appeals the district court's grant of summary judgment to Lonnie on all three claims.  We affirm.

## *ISSUE*

[¶2]    We restate the issue:

> Is Lonnie entitled to summary judgment on Delores'
> claims for unjust enrichment, constructive trust, and
> quiet title?

## *FACTS*

[¶3]    This case involves a dispute over family property.  Through two quitclaim deeds—one in 2015 and one in 2016[1]—Delores and Duwayne Statzer conveyed a parcel of land in Carbon County (the Carbon County property) to their son, Lonnie Statzer.  Both deeds identified Delores and Duwayne as "Grantor" and Lonnie as "Grantee," and the 2016 deed stated "neither the Grantor nor any other person . . . shall or will hereafter claim or demand any right or title to the subject property or any part thereof[.]"  The 2015 deed was for $0; the 2016 deed specified that Lonnie paid $10 in consideration.

[¶4]    Delores and Duwayne continued utilizing and controlling the Carbon County property in certain ways over the next few years.  They leased the property to a power company, accepted payments on the lease, and at one point signed an option contract for sale of the property.  They also paid the property taxes. Duwayne passed away in January 2019.

[¶5]    In Spring 2019, Lonnie traded the Carbon County property for a parcel of property in Laramie County (the Laramie County property), accepting the Laramie County property via a special warranty deed.  Following this transaction, the relationship between Lonnie and Delores deteriorated.  This deterioration is evidenced by a seven page letter Lonnie wrote to Delores in June 2019, in which he discussed his understanding of both property transactions, his belief Duwayne wanted him to acquire the Laramie County property,

---

[1] The 2016 deed included the N1/2SW1/4 portion of the property, which had been omitted from the 2015 deed.

Delores' "lies [and] rumors" about him and favoritism toward her other son, and Delores' repeated demands for title to the Laramie County property.

[¶6]   In August 2019, Delores sent Lonnie a letter, through her attorney, demanding he "return [] legal ownership" of the Laramie County property.  When Lonnie refused, Delores filed suit against him.

[¶7]   Delores' complaint sought legal title to the Laramie County property, asserting claims for unjust enrichment, constructive trust, and quiet title.   In an accompanying affidavit, she stated:

- she and Duwayne acquired certain property during their marriage;[2]

- "in an uncounseled attempt at estate planning," they transferred a property to each of their children;

- the understanding on transferring these properties was that the children would receive "title only and [she and Duwayne] would retain possession and control of the properties";

- "in accordance with this plan," she and Duwayne transferred the Carbon County property to Lonnie;

- after Duwayne died, Lonnie traded the Carbon County property for property in Laramie County;

- she and Duwayne "paid all the property taxes and fees associated with the Carbon County property";

- Lonnie knew the Carbon County property "was not his to control";

- Lonnie admitted "he did not believe the property was his and that it belonged to [her]" in his June 2019 letter; and

- Lonnie was "preventing [her] from controlling, accessing, owning or possessing the Laramie County property."

---

[2] Charles E. Terry conveyed the Carbon County property to Delores and Duwayne in November 2002.

Lonnie responded, generally denying her claims, and asserting several affirmative defenses.

[¶8]   After completing discovery, Lonnie moved for summary judgment on all three of Delores' claims, and Delores moved for summary judgment on her unjust enrichment and constructive trust claims.  In support of his motion, Lonnie submitted a Rule 56.1 statement of facts, deeds for the Carbon County and Laramie County properties, and Delores' responses to his first set of interrogatories, requests for admissions, and requests for production.  In support of her motion, Delores submitted a Rule 56.1 statement of facts, deeds and other documents related to the Carbon County property, deeds and related documents for the Laramie County property, Lonnie's June 2019 letter, Lonnie's admission that he wrote the letter, her affidavit, her August 2019 letter to Lonnie, and Lonnie's responses to her requests for production.  Following a hearing, the district court awarded summary judgment to Lonnie on all three claims.  Delores appealed.

### STANDARD OF REVIEW

[¶9]   W.R.C.P. 56(a) states "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[¶10]  We review a district court's summary judgment ruling de novo.  *Spence v. Sloan*, 2022 WY 96, ¶ 22, 515 P.3d 572, 579 (Wyo. 2022) (citing *Miller v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶ 13, 500 P.3d 242, 246 (Wyo. 2021)).

> We . . . afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016).  This Court reviews the same materials and uses the same legal standard as the district court. *Id.*  The record is assessed from the vantage point most favorable to the party opposing the motion . . . , and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.*  A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

*Id.* (quoting *Miller*, ¶ 13, 500 P.3d at 246).

[¶11]  As to the burdens on the parties:

> The party moving for summary judgment bears the burden of establishing a prima facie case and showing there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Once that burden is met, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim.

*Id.* ¶ 23, 515 P.3d at 579 (quoting *Miller*, ¶ 14, 500 P.3d at 246).

## *DISCUSSION*

[¶12] Delores contends the district court erred by granting summary judgment to Lonnie because, at the very least, there are genuine issues of material fact on all three of her claims. At best, she contends, the district court should have granted her summary judgment on her unjust enrichment and constructive trust claims. On our de novo review, we agree with the district court that Lonnie is entitled to summary judgment on all three claims.

### *Unjust Enrichment*

[¶13] "Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another." *Electrical Wholesale Supply Co., Inc. v. Fraser*, 2015 WY 105, ¶ 27, 356 P.3d 254, 261 (Wyo. 2015) (quoting *Bowles v. Sunrise Home Center, Inc.*, 847 P.2d 1002, 1004 (Wyo. 1993)). The plaintiff must prove:

> (1) Valuable services were rendered, or materials furnished,
>
> (2) to the party to be charged,
>
> (3) which services or materials were accepted, used and enjoyed by the party, and,
>
> (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Id.* (quoting *Bowles*, 847 P.2d at 1004).

[¶14] The fourth element of an unjust enrichment claim includes two separate requirements. *Jacoby v. Jacoby*, 2004 WY 140, ¶ 12, 100 P.3d 852, 856 (Wyo. 2004); *see also Nuhome Invs., LLC v. Weller*, 2003 WY 171, ¶ 22, 81 P.3d 940, 948 (Wyo. 2003); *Elec. Wholesale Supply*, ¶ 34, 356 P.3d at 263. First, the plaintiff must prove "the circumstances were such that the [defendant] was reasonably notified that the [plaintiff] expected to be paid[.]" *Jacoby*, ¶ 12, 100 P.3d at 856 (quoting *Nuhome*, ¶ 22, 81 P.3d at 948). An "express demand for payment" is not required. *Redland v. Redland*, 2012 WY 148, ¶ 146, 288 P.3d 1173, 1205 (Wyo. 2012). Second, the plaintiff must prove the defendant would be unjustly enriched if the plaintiff is not paid. *Jacoby*, ¶ 12, 100 P.3d at 856 (quoting *Nuhome*, ¶ 22, 81 P.3d at 948).

[¶15] In his summary judgment memorandum, Lonnie argued there was no evidence the Carbon County property was conveyed to him under circumstances reasonably notifying him that Delores expected to be paid for the Carbon County property. We conclude Lonnie met his prima facie burden by showing a lack of evidence on this requirement. Delores therefore had to come forward with evidence supporting the reasonable notification requirement. She did not.

[¶16] Delores argued Lonnie was wrong on the facts and the law. On the facts, she asserted Lonnie's June 2019 letter created a genuine issue of material fact because Lonnie knew she and Duwayne wanted the Carbon County property back:

> Dad said he didn't want to sell the [Carbon County] property but he would trade for some deer or elk property with tags. No one in the family said a word while this process was going on over [three] proposed properties. As soon as they offered this new property and I told you [and] Dad all hell broke loose, why? Because David wanted it [and] by God you were going to get it for him. You both kept saying you wanted you[r] name back on the [Carbon County] land.

She further asserted her August 2019 letter demanding Lonnie return the Laramie County property to her created a genuine issue of material fact.

[¶17] We conclude neither letter created a genuine issue of material fact whether the Carbon County property was conveyed to Lonnie under circumstances reasonably notifying him that Delores expected to be paid for the property. Lonnie's letter supported that Delores and Duwayne demanded the Carbon County property back sometime after Lonnie began exploring the possibility of trading it for different property. Delores' letter supported that she demanded Lonnie give her the Laramie County property in August 2019, years after the Carbon County property was conveyed to him. These after-the-fact demands for the Carbon County and Laramie County properties have nothing to do with

whether Lonnie was reasonably notified Delores expected to be paid for the property when she and Duwayne conveyed the Carbon County property to him in 2015 and 2016.

[¶18] On the law, Delores focused on the fourth element's second requirement—unjust enrichment—to the exclusion of the first requirement—reasonable notification of an expectation of payment. In the district court, as on appeal, she emphasized our statements in *Redland* that "analysis of the fourth element of an unjust enrichment claim does not rest on an express demand for payment"; "[e]lement four is the heart of an unjust enrichment claim"; and "[t]he receipt of a benefit must be unjust" to the defendant. *Redland*, ¶ 146, 288 P.3d at 1205–06 (quoting *Jacoby*, ¶ 13, 100 P.3d at 856). In emphasizing these statements, Delores seems to suggest the fourth element requires only proof of unjust enrichment. However, as explained above, the fourth element includes two separate requirements, *Jacoby*, ¶ 12, 100 P.3d at 856, both of which were met in *Redland*, ¶¶ 145–49, 288 P.3d at 1205–07.

[¶19] Lonnie made his prima facie case by showing there was no evidence that when title to the Carbon County property was conveyed to him, he was reasonably notified Delores expected payment for the property. And, as shown, Delores failed to come forward with evidence Lonnie was reasonably notified. Lonnie was therefore entitled to summary judgment on Delores' unjust enrichment claim.

### *Constructive Trust*

[¶20] "A constructive trust arises by construction of the court when equity so demands." *Baker v. Ayres & Baker Pole & Post, Inc.*, 2005 WY 97, ¶ 26, 117 P.3d 1234, 1242 (Wyo. 2005) (citing *Rossel v. Miller*, 2001 WY 60, ¶ 13, 26 P.3d 1025, 1028 (Wyo. 2001)). "It is an equitable remedy imposed to compel a person who unfairly holds a property interest to hold property in trust for the person for whom in equity and good conscience it should be held." *Id.* (citing *Rossel*, ¶ 13, 26 P.3d at 1028). Stated differently,

> "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

*Id.* (quoting *Rossel*, ¶ 19, 26 P.3d at 1029).

[¶21] "To warrant imposition of a constructive trust," the plaintiff must prove three elements: "a promise, either express or implied; a transfer made in reliance on that promise;

and unjust enrichment."³ *Id.* (citing *Rossel*, ¶ 13, 26 P.3d at 1028). As to the third element, "unjust enrichment occurs when 'a party receives something of value *without payment*, which was accepted and used so as to unjustly enrich the recipient of the goods or services.'" *Baker v. Ayres & Baker Pole & Post, Inc.*, 2007 WY 185, ¶ 17, 170 P.3d 1247, 1252 (Wyo. 2007) (quoting *McNeill Family Trust v. Centura Bank*, 2003 WY 2, ¶ 26, 60 P.3d 1277, 1288 (Wyo. 2003)). Each constructive trust claim is unique and should be decided on its "particular facts, circumstances, and conditions." 90 C.J.S. *Trusts* § 182, Westlaw (Aug. 2022 update) ("No exhaustive catalog can be made of the types of wrongful retention of property which have moved courts to decree a constructive trust; wherever equity finds such a wrongful holding, it will give relief, whether the type of injustice be new or old." (footnote omitted)).

[¶22] The Restatement (First) of Restitution § 160, Westlaw (May 2022 update) states that "[w]here property is held by one person upon a constructive trust for another, and the constructive trustee by the wrongful disposition of the property acquires other property, he holds the property so acquired upon a constructive trust[.]" *See also Bogert's The Law of Trusts and Trustees* § 471, Westlaw (June 2022 update) ("If the property has been sold, the trust attaches to the proceeds held by the defendant, or to other property held by the defendant into which the original property or its proceeds can be traced." (footnotes omitted)). Thus, Delores' constructive trust claim would survive summary judgment if she could show that when she and Duwayne conveyed the Carbon County property to Lonnie there was an express or implied promise Lonnie would reconvey the Carbon County property back to them, and that she and Duwayne conveyed the property to Lonnie in reliance on such promise. *Cf. Thomasi*, 660 P.2d 806 (agreeing there was sufficient evidence to impose a constructive trust where Ms. Bainbrich conveyed real property to her friends for sham consideration in an effort to place the property beyond the reach of creditors and pursuant to an agreement they would reconvey the property to her when any risk of her losing the property had passed, the threat had long passed, and the friends never reconveyed the property); *Fuller v. Fuller*, 606 P.2d 306 (Wyo. 1980) (concluding the facts supported imposition of a constructive trust where Ms. Fuller transferred title of unencumbered real property to her son pursuant to an agreement that he would borrow money to pay Ms. Fuller's debts and then, after the loan was repaid, retransfer the property to her).

[¶23] In his summary judgment memorandum, Lonnie argued there was no evidence he made any promise to reconvey the Carbon County property to his parents. Consequently, Delores "could not have relied on any such promise when transferring the Carbon County

---

³ Some states require the constructive trust plaintiff to establish the parties had a fiduciary or confidential relationship. *See, e.g.* 90 C.J.S. *Trusts* § 176, Westlaw (Aug. 2022 update). Wyoming does not. *Thomasi v. Koch*, 660 P.2d 806, 809 (Wyo. 1983) ("We do not find a requirement in the jurisprudence of the State of Wyoming that a constructive trust can only be found if a fiduciary relationship or a close family relationship exists between the transferor and transferee at the time that the property is transferred.").

property to [him]." We agree. By showing a lack of evidence on the first two elements for a constructive trust claim Lonnie satisfied his prima facie burden.

[¶24] Delores' discovery responses, which Lonnie submitted in support of his motion, allude to an agreement to reconvey,[4] but Delores has never relied on them to support her constructive trust claim on summary judgment. We "will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 24, 503 P.3d 23, 31 (Wyo. 2022) (quoting *Woods v. State*, 2017 WY 111, ¶ 18, 401 P.3d 962, 969 (Wyo. 2017)); *see also* W.R.C.P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 35, 403 P.3d 1033, 1046 (Wyo. 2017) (declining to consider an argument that there was a genuine issue of material fact where Bear Peak Resources, LLC chose not to make that argument to the district court and instead made it for the first time on appeal).

[¶25] Delores instead plainly asserted in her affidavit that the agreement was Lonnie would receive title to the Carbon County property but she and Duwayne would retain possession and control of the property. She then argued Lonnie's June 2019 letter, which she attached to her summary judgment motion and relied on to oppose Lonnie's motion, created a genuine issue of material fact in that it was replete with the terms of the agreement. Referring to the letter, she specifically noted Lonnie's acknowledgement that the Carbon County property was put in his name for safekeeping and that she and Duwayne asked him to put the property back in their names. She further asserted Lonnie "memorialized his agreement to put the Laramie County property in [her] name after the transfer."

[¶26] In his letter, Lonnie stated the following about ownership of the Carbon County property:

> I never thought the property was mine. I told you the last time
> I was talking to you that it was yours until you and Dad passed
> away.

---

[4] In her response to Lonnie's first set of interrogatories, Delores asserted Lonnie's June 2019 letter "shows that [Lonnie] knew the agreement was made with my husband, Duwayne Statzer, [] that my husband and I retained full power, possession, and control of the property and that the property was to be transferred back into our names at any time we requested." In her response to Lonnie's requests for admission, she asserted "[t]he Carbon County property listed on the Quitclaim Deed, dated May 16, 2016, was a verbal agreement between [Lonnie], my husband, and me that title would be transferred to [Lonnie] but the sole power, right, and authority to transfer the property would remain in control of my husband and me. [Lonnie] knew of this agreement as stated in his letter."

> Yes it was put in our names early for safe keeping. Mine and David[']s piece of land was valued about the same. The river prop[erty] was valued at 123,000, David[']s nearly the same and Rene[']s 250,000.

[¶27] In addition, Lonnie said the following about his parents demanding the Carbon County property back:

> Dad said he didn't want to sell the property but he would trade for some deer or elk property with tags. No one in the family said a word while this process was going on over [three] proposed properties. As soon as they offered this new property and I told you [and] Dad all hell broke loose, why? Because David wanted it [and] by God you were going to get it for him. You both kept saying you wanted you[r] name back on the land.

Finally, Lonnie said the following about putting the Laramie County property in Delores' name: "I told you a few months ago when this started. Because you put the land solely in my name I would have to sign for it and then I would put it back in your name if the lies [and] rumors stopped about the lying [and] stealing the land."

[¶28] At most, these 2019 statements establish that Duwayne and Delores demanded Lonnie return the Carbon County property to them only after they learned he was exploring the possibility of trading it for different property, and that in 2019 Lonnie contemplated he might put the Laramie County property in Delores' name if certain conditions were met. Lonnie's 2019 letter sheds no light on what promises, if any, he made to reconvey the Carbon County property at the time his parents conveyed it to him in 2015 and 2016. Nor does it show Delores conveyed the Carbon County property to Lonnie in reliance on any promise to reconvey. In fact, the 2016 deed, which both parties submitted with their summary judgment materials, expressly stated "neither the Grantor nor any other person . . . shall or will hereafter claim or demand any right or title to the subject property or any part thereof[.]"

[¶29] Because Delores failed to come forward with evidence to support the first two elements of her constructive trust claim, Lonnie is entitled to summary judgment on that claim.

### *Quiet Title*

[¶30] Wyo. Stat. Ann. § 1-32-201 (LexisNexis 2021) identifies who may bring a quiet title action:

9

An action may be brought by a person in possession of real property against any person who claims an estate or interest therein adverse to him, for the purpose of determining the adverse estate or interest. The person bringing the action may hold possession himself or by his tenant.

[¶31] To maintain a quiet title action "the plaintiff must have (1) possession, and (2) legal title or some interest in the property." *Goodrich v. Stobbe*, 908 P.2d 416, 418 (Wyo. 1995) (quoting *Hirsch v. McNeill*, 870 P.2d 1057, 1059 (Wyo. 1994)). If land is unoccupied, the person with title may bring a quiet title action, "either because the remedy exists independent of the statute, or because his title gives him constructive possession." *Bellis v. Kersey*, 2010 WY 138, ¶ 17, 241 P.3d 818, 824 (Wyo. 2010) (quoting *Goodrich*, 908 P.2d at 418).

[¶32] For the reasons stated above, Delores has no equitable interest in the Laramie County property. Moreover, there is no dispute Delores does not have possession of the Laramie County property. Her affidavit states Lonnie is "preventing [her] from controlling, accessing, owning or possessing the Laramie County property." Nor is there any dispute Lonnie has title to the Laramie County property. Consequently, regardless of whether the land is vacant, the right to bring a quiet title action belongs to Lonnie, not Delores. Because Delores lacks standing, Lonnie is entitled to summary judgment on her quiet title claim.

[¶33] Affirmed.

10