# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 56

APRIL TERM, A.D. 2026

May 22, 2026

JAMES TALLICHET,

Appellant
(Plaintiff),

v.

JACKSON HOLE COMMUNITY
RADIO, INC. (a/k/a "KHOL") a
Wyoming Nonprofit corporation,

Appellee
(Defendant).

S-25-0151

*Appeal from the District Court of Teton County*
The Honorable Melissa M. Owens, Judge

*Representing Appellant:*
Inga L. Parsons, Inga Parsons Law, LLC, Kelly, Wyoming.

*Representing Appellee:*
Paula A. Fleck, P.C., Holland & Hart LLP, Jackson, Wyoming.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**JAROSH, Justice.**

[¶1]   Jim Tallichet founded Jackson Hole Community Radio, Inc. (JHCR), which operates radio station KHOL in Jackson, Wyoming.  After he left his position as the President of JHCR, Mr. Tallichet sought repayment of $219,685, which he maintains he loaned to the station to support its start-up and operational expenses.  When JHCR refused to acknowledge the funds as a loan or repay him, Mr. Tallichet brought suit, including claims for breach of an implied contract and unjust enrichment.  On cross motions for summary judgment, the district court concluded Mr. Tallichet's claims for breach of an implied contract and unjust enrichment were barred by the statute of frauds.  Mr. Tallichet appealed.  We affirm the district court's grant of summary judgment for JHCR.

### ISSUES

[¶2]   Mr. Tallichet raises five issues on appeal, which we rephrase and consolidate as:

> 1.    Did the district court err in granting summary judgment on Mr. Tallichet's claim for breach of an implied contract?
>
> 2.    Did the district court err in granting summary judgment on Mr. Tallichet's claim for unjust enrichment?

### FACTS AND PROCEEDINGS

[¶3]   Mr. Tallichet's dream of starting a community radio station started in the 1990s while working as a disc jockey in Jackson, Wyoming.  He called the founder of another community radio station in Aspen, Colorado, for advice and then drove to San Antonio, Texas, to attend a public radio conference.  In 1995, Mr. Tallichet filed the articles of incorporation for his new station.  For the next twelve years, Mr. Tallichet worked through licensing applications, secured a construction permit, obtained the station's non-profit status, and solicited charitable donations.

[¶4]   Mr. Tallichet served as the President of JHCR from its inception.  As President, he was responsible for the station's engineering, organized volunteers, ensured the station complied with federal regulations, and led fundraising efforts.  Mr. Tallichet also assisted an accountant, Patti Rosen, in preparing JHCR's tax returns.  In addition to his operational duties, Mr. Tallichet served as a JHCR Board member and made charitable donations to the station not at issue in this appeal.  The primary issues in this case revolve around other monetary contributions Mr. Tallichet made to the station, whether those contributions were loans, and what the JHCR Board knew or did not know about the transactions.

1

*Mr. Tallichet conveys money to JHCR*

[¶5]    JHCR held a Board meeting on April 9, 2007.  Mr. Tallichet was in attendance, as were two other Board members, Walt Farmer and Walker White.  The meeting minutes reference a "loan" and "22K" with notes indicating Mr. Tallichet distributed a sheet of paper to spur discussion of loan terms and details.  The sheet of paper indicated a two-year loan that would begin March 28, 2007, and would carry a 4.4 percent interest rate.  Under "action," the minutes state:  "JT will draft and distribute copies to all board members within one week" and that the draft "shall reflect the comments and suggestions discussed above."  Mr. Tallichet admits he "never followed through" on drafting the proposed agreement as contemplated in the April 9, 2007, meeting minutes.

[¶6]    Mr. Tallichet does not recall what happened next with the proposed loan, including whether the Board tabled the loan discussion.  But Mr. Tallichet agrees there is no written agreement for any loan between him and JHCR.  Despite the absence of a written agreement or Board approval, the record indicates Mr. Tallichet started giving JHCR significant sums of money several days *before* the April 9, 2007, Board meeting where Mr. Tallichet pitched his loan proposal.  He continued to do so afterward.

*JHCR operations and tax filings*

[¶7]    JHCR began broadcasting as KHOL in early 2008.  Although there are no loan agreements or other written agreements documenting his monetary contributions to JHCR, tax documents indicate Mr. Tallichet conveyed money to JHCR.  Specifically, the station filed an Internal Revenue Service (IRS) Form 990, dated March 31, 2008, indicating a loan from Mr. Tallichet to JHCR for the principal amount of $101,533 with $131,533 as the balance due.  The Form 990 asked the filer whether the loan was "Approved by board or committee" and if it was a "written agreement."  The 2008 Form 990 is checked "Yes" under "Approved by board or committee" and "Yes" under "Written Agreement."  The Form 990 also identified April 2, 2007, as the "Date of loan," noted a three-year maturity date, and inserted "Balloon Payment" under the category of "Repayment terms."  The "Interest rate" category on the Form 990 stated "0.000" and noted "none" under the "Consideration furnished by lender" category.

[¶8]    Mr. Tallichet denies telling the accountant, Ms. Rosen, to check "Yes" under the "Written agreement" category.  While Mr. Tallichet claims individual Board members "were aware" of his alleged loan, he could not say the Board approved any loan.  Both Mr. Tallichet and Ms. Rosen confirm they worked together on the tax filings in the early years of the station.  Ms. Rosen relied on information provided by Mr. Tallichet when preparing the tax documents.  Mr. Tallichet confirms he signed the station's tax returns until his resignation.  No evidence exists that the Board reviewed or approved the station's tax filings until around the time of Mr. Tallichet's departure in 2015.

[¶9] From 2009 through 2015, the station's tax filings continued to identify money Mr. Tallichet provided to JHCR as a loan. The Form 990s filed with the IRS indicated Mr. Tallichet continued to regularly give money to JHCR, but do not identify the contributions as a new or separate loan from the initial $101,533 contribution. Instead, the Form 990s added the new contributions to the "Balance due at end of year" section. In 2011, the original maturity date for the initial $101,533 contribution from Mr. Tallichet changed from April 2, 2010, to April 2, 2014. When the station's Form 990 was filed in 2015, the document indicated the original loan amount was now $301,533, with $219,685 as the balance due on the loan. The station's Form 990 reflected a reduction in the balance due because on July 1, 2015, Mr. Tallichet paid himself $81,848 from station funds as a "repayment" on the alleged debt. Around this time, the Board discovered Mr. Tallichet had been claiming the contributions as a loan on the station's Form 990s.

[¶10] Mr. Tallichet left his positions with the station shortly after initiating the transfer. On August 6, 2015, four JHCR Board members wrote Mr. Tallichet a letter after learning he withdrew the $81,848 from the station account without approval. The Board members wrote:

> The Board has asked you numerous times for proof of the debt that you say you are owed by KHOL, and you have yet to provide it to us. We have also asked for copies of monthly bank statements, and you have yet to provide that to us either. Once the debt is verified by the Board, then the Board can negotiate with you regarding the repayment terms that are sustainable for the station[.]

Mr. Tallichet states he paid himself the $81,848 because, "I kind of felt like I should probably lower the debt that the station owes me." After Mr. Tallichet's departure in 2015, the Board began reviewing and signing the station's Form 990s.

[¶11] The parties attempted to resolve their differences, but after a series of tolling agreements, Mr. Tallichet commenced the underlying action in 2023.

***District Court proceedings and summary judgment order.***

[¶12] Mr. Tallichet's complaint alleged three causes of action: (1) breach of implied contract; (2) equitable mortgage; and (3) unjust enrichment. JHCR initially filed a motion to dismiss, arguing Mr. Tallichet failed to state a claim upon which relief could be granted because the alleged loan agreement violates the statute of frauds. The district court denied the motion.

[¶13] Eventually the parties filed cross-motions for summary judgment. Mr. Tallichet argued the station's representation of the money as a loan in its tax filings meant the district

court could conclude as a matter of law his contributions were a loan. JHCR argued no evidence showed the parties entered into any kind of an agreement related to the contributions, and even if they did, the statute of frauds bars such oral agreements.

[¶14] Following a hearing, the district court issued a written order granting JHCR's motion for summary judgment and denying Mr. Tallichet's motion for summary judgment. The district court found "[t]here are no facts or writings between the parties to document that the funds were provided as a loan at the time that the money was provided to [JHCR]." It then found no documents exist showing that the Board agreed to be responsible for Mr. Tallichet's contributions to the station. Although the district court acknowledged the station's tax filings indicated the money Mr. Tallichet provided were liabilities in the form of debts, it found those acknowledgments in the IRS documents were initiated by Mr. Tallichet.

[¶15] Accordingly, the district court concluded Mr. Tallichet's breach of implied contract claim was barred by the statute of frauds, and relevant exceptions – partial or full performance and promissory estoppel – did not apply. Similarly, the district court concluded that Mr. Tallichet's claim for unjust enrichment was barred by the statute of frauds. Mr. Tallichet appealed.[1]

## STANDARD OF REVIEW

[¶16] We review a grant of summary judgment de novo. *Teton Cnty. Bd. of Comm'rs v. Bd. of Land Comm'rs*, 2025 WY 48, ¶ 8, 567 P.3d 675, 678 (Wyo. 2025). "This Court affords no deference to the district court's ruling and, instead, reviews a summary judgement in the same light as the district court, using the same materials and following the same standards." *Id.*, ¶ 8, 567 P.3d at 678 (quoting *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 8, 401 P.3d 891, 895 (Wyo. 2017)) (citation modified). "Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Rafter J Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 17, 558 P.3d 562, 569 (Wyo. 2024)) (citations omitted). "When, as here, the district court resolved the case by the grant and denial of cross-motions for summary judgment, both the grant and the denial of the motions for a summary judgment are subject to appeal if the decision completely resolves the case." *Id.* (quoting *Hurst,* ¶ 8, 401 P.3d at 895)) (citation modified). "Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 P.3d 1323, 1326 (10th Cir. 2019).

---

[1] Mr. Tallichet does not challenge the district court's ruling on his equitable mortgage claim in this appeal.

[¶17]   The district court determined that the alleged loan agreement is barred, in part, by the statute of frauds and by Mr. Tallichet's failure to demonstrate an exception to the statute of frauds applies.  "The determination that a given agreement is within the statute of frauds is a question of law which we review de novo."  *Parkhurst v. Boykin*, 2004 WY 90, ¶ 15, 94 P.3d 450, 457 (Wyo. 2004).

## DISCUSSION

## I.     The district court did not err when it concluded the statute of frauds bars Mr. Tallichet's breach of implied contract claim.

[¶18]   The Legislature has codified Wyoming's statute of frauds, which provides in relevant part:

> (a)   In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
> (i)   Every agreement that by its terms is not to be performed within one (1) year form the making thereof;
> (ii)   Every special promise to answer for the debt, default or miscarriage of another person;
>
> ***

Wyo. Stat. Ann. § 1-23-105(a)(i)-(ii) (2025).  Mr. Tallichet acknowledges the alleged loan was not reduced to writing when the money was provided to the station.  As a result, Mr. Tallichet's claim in this case is for breach of an implied contract based on an alleged oral agreement related to the loan.  For such a claim, limited equitable exceptions to the statute of frauds exist, "including the doctrines of full or partial performance . . .."  *Davis v. Harmony Dev. Co.*, 2020 WY 39, ¶ 16, 460 P.3d 230, 236 (Wyo. 2020) (quoting *Redland v. Redland*, 2012 WY 148, ¶ 89, 288 P.3d 1173, 1193 (Wyo. 2012)); *see also Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 25 n.5, 75 P.3d 640, 651 n.5 (Wyo. 2003) (discussing this Court's long-held recognition there are equitable exceptions to the statute of frauds but such exceptions are limited).

[¶19]   Here, Mr. Tallichet contends he performed his obligations pursuant to the alleged oral agreement; therefore, he argues the district court erred when it did not apply the partial or full performance exception to the statute of frauds.  However, before an oral agreement is removed from the statute of frauds, "the contract terms must be so certain that the court can require the specific thing agreed upon be done."  *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo. 1997) (citing *Noland v. Haywood*, 23 P.2d 845, 846 (Wyo. 1933)).  This Court will not apply the doctrine of partial performance "unless the oral agreement sought to be

5

enforced is just and certain[.]" *Redland*, ¶ 90, 288 P.3d at 1193. "The sufficiency of acts necessary to establish partial performance is a question of law." *Harmony Dev.,* ¶ 18, 460 P.3d at 237 (citations omitted).

[¶20] Mr. Tallichet has the burden of satisfying the partial performance exception to the statute of frauds. *See Davis v. Davis*, 855 P.2d 342, 347 (Wyo. 1993) ("the party seeking to invoke the [partial performance] exception must prove 'beyond the possibility of findings to the contrary' the elements of possession and part or full payment.") (quoting *Butler v. McGee*, 373 P.2d 595, 597 (Wyo. 1962)). To satisfy this exception, Mr. Tallichet must show the implied contract sought to be enforced is "just and certain." *Davis*, 855 P.2d at 347.

[¶21] Mr. Tallichet maintains there are only two essential terms to the alleged oral agreement, and those terms are sufficiently definite: (1) "that the monies would be loaned"; and (2) JHCR would "pay [the money] back when [JHCR] had sufficient resources to do so." These are not just and certain terms. Although Mr. Tallichet claims he substantially and fully performed his end of the bargain, we cannot be sure because the alleged loan agreement does not even fix the amount Mr. Tallichet would provide to JHCR, much less identify an interest rate, a repayment schedule, or repayment terms. This Court cannot enforce these alleged promises of future performance because the essential terms were not "defined with certainty." *Fowler*, 933 P.2d at 505 (citing *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 334-35 (Wyo. 1986)).

[¶22] Even if Mr. Tallichet had made a firm commitment to loan a certain sum and he substantially performed it, there is no evidence that the Board contemplated or agreed to any oral loan agreement, let alone the oral agreement he now asks this Court to enforce. Mr. Tallichet has not met his burden, in part because enforcing the alleged loan would require this Court to impermissibly supply terms that were not agreed to, including JHCR's supposed promise to pay him back when the station had sufficient resources. *See Fowler*, 933 P.2d at 505 ("It is well established that courts do not have the power to supply indefinite terms."). Therefore, the district court did not err when it concluded that Mr. Tallichet failed to establish the existence of a just and certain agreement to satisfy the partial or full performance exception to the statute of frauds.

[¶23] Based upon the undisputed material facts, the alleged oral agreement falls within the statute of frauds, and the exception for partial performance does not apply. As a result, we conclude the district court was correct in granting JHCR's motion for summary judgment on Mr. Tallichet's claim for breach of implied contract.

## II.     JHCR is entitled to summary judgment on Mr. Tallichet's unjust enrichment claim.

[¶24] Mr. Tallichet also argues JHCR was unjustly enriched by the money he conveyed to the station. Specifically, he contends JHCR's actions following the conveyances demonstrate the station "adopted" the money as a liability that would be paid back. JHCR asserts that Mr. Tallichet's unjust enrichment claim should also be barred by the statute of frauds, and then argues no evidence indicates JHCR, as an organization, was aware it needed to repay the money. Because accepting JHCR's initial argument would preclude Mr. Tallichet from recovering any money, we must first consider whether the statute of frauds bars Mr. Tallichet's unjust enrichment claim.

### A. The statute of frauds does not bar unjust enrichment remedies in Wyoming.

[¶25] JHCR maintains the district court properly found that Mr. Tallichet cannot circumvent the statute of frauds by seeking equitable relief in the form of unjust enrichment.

[¶26] Quantum meruit/unjust enrichment is an equitable doctrine. *Bereman v. Bereman*, 645 P.2d 1155, 1160 (Wyo. 1982) (citing *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, 623 P.2d 758 (Wyo. 1981)); *see also Silver Dollar Motel, Inc. v. Taylor Elec. Co.*, 761 P.2d 1006, 1008-09 (Wyo. 1988) ("The quantum meruit/unjust enrichments theory is founded on implied contract – one that is dictated by equity."). The doctrine has deep roots in common law. *See, e.g., English v. Mitchell Cattle Co.*, 55 P. 310, 312 (Wyo. 1898) (early case discussing how "under certain circumstances" the law "will create a promise" when a person has conferred another benefits but cannot show a promise); *cf. Cross v. Berg Lumber Co.*, 7 P.3d 922, 934 (Wyo. 2000) (comparing replevin actions for restitution with unjust enrichment and recognizing both as "firmly entrenched" in common law) (citation omitted). Similarly, Wyoming's contemporary statute of frauds is functionally identical to the statute of frauds enacted immediately prior to statehood. *Compare* Wyo. Stat. Ann. § 1-23-105 (2025) *with* R.S. 1887, Title 15, ch. 1, § 1249 (1887).

[¶27] The statute of frauds and unjust enrichment theory have coexisted in Wyoming jurisprudence for over a century and the statute of frauds has not historically functioned as a bar to unjust enrichment claims in Wyoming. There are several reasons. First, this Court has found that "one who has performed labor and services under a contract which cannot be enforced because within the statute of frauds, and which has been repudiated by the other party thereto, may recover for such services upon a quantum meruit." *Nastrom v. Sederlin*, 3 P.2d 82, 84 (Wyo. 1931) (citing 27 C.J. 363, § 441). In *Nastrom*, the plaintiff sheep rancher sought restitution for services he rendered on defendant sheep rancher's property under an agreement deemed void under the statute of frauds. *Nastrom*, 3 P.2d at 83. The Court affirmed the district court's judgment compensating the plaintiff, reasoning:

> It would make no difference if the contract were void for uncertainty, or void because within the statute of frauds . . . . in

7

either case the law implies a contract to pay the reasonable value for materials furnished and services performed, where, as in this case, the promisor refuses to fulfill the contract.

*Nastrom*, 3 P.2d at 86-87.

[¶28] Next, and consistent with *Nastrom,* this Court subsequently categorized unjust enrichment as a form of "implied-in-law" contract arising from "facts and circumstances independent of [the parties'] agreement or presumed intention." *Roberts v. Roberts*, 196 P.2d 361, 450 (Wyo. 1948) (citing *quasi contract*, Ballentine's Law Dictionary, 1065 (ed. 1948)); *see also, Symons v. Heaton*, 2014 WY 4, ¶ 12, 316 P.3d 1171, 1176-77 (Wyo. 2014) (explaining the distinction between contracts implied-in-fact and those implied-in-law). Specifically, with unjust enrichment "[t]he promise is purely fictitious and is implied in order to fit the actual cause of action to the remedy." *Roberts*, 196 P.2d at 450-51. The absence of a party's promise distinguishes unjust enrichment from contract law doctrines, such as promissory estoppel. *See, e.g., Parkhurst*, ¶ 21, 94 P.3d at 460 (stating promissory estoppel "is a doctrine incorporated in the law of contracts" and explaining "the existence of a clear and definite promise" is a necessary element to establishing promissory estoppel).

[¶29] Finally, this Court recognizes that quantum meruit/unjust enrichment is related to the remedy of restitution, not contract law:

The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*State v. BHP Petroleum Co., Inc.*, 804 P.2d 671, 673 (Wyo. 1991) (citation omitted); *see also, R.O. Corp. v. John H. Bell Iron Mountain Ranch Co.,* 781 P.2d 910, 912 (Wyo. 1989) (noting the Court has "quoted with approval" the statement in 66 Am. Jur. 2d, *Restitution and Implied Contracts* § 3 (1973)). Our more recent rulings continue to reflect restitution as an underlying basis for unjust enrichment remedies. *See, e.g., Robinson v. Black*, 2025 WY 25, ¶ 10, 564 P.3d 1030, 1035 (Wyo. 2025) (citing 66 Am. Jur. 2d, *Restitution and Implied Contracts* § 8 (2001)).

8

[¶30]   JHCR asks this Court to consider *Cargill, Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977), for its position that the statute of frauds precludes unjust enrichment claims.  That case is unpersuasive as it involves the application of Colorado law and an executory oral contract where no benefit was conveyed.  *See Cargill*, 553 F.2d at 1224-25 (noting plaintiff performed no services and defendant had received no benefit to accept, therefore, no legal obligation existed).

[¶31]   For these reasons, we continue to hold that the statute of frauds does not bar unjust enrichment claims in Wyoming.  *See Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 50, 519 P.3d 626, 641-42 (Wyo. 2022) ("When acting in equity, the district court is limited to only fashioning relief within the context of a recognized equitable theory.") (citation omitted) (emphasis added).

[¶32]   Mr. Tallichet's unjust enrichment claim is not barred by the statute of frauds.

## B.      Mr. Tallichet did not put JHCR on notice that he expected repayment for his contributions to the station.

[¶33]   Mr. Tallichet argues JHCR was unjustly enriched because he provided the station with money and JHCR used the money under circumstances that reasonably notified it that repayment was expected.  Specifically, he argues JHCR was aware the money was a loan because the transaction was documented as a loan on the station's tax forms.

[¶34]   As noted above, "[u]njust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another."  *Statzer v. Statzer*, 2022 WY 117, ¶ 13, 517 P.3d 574, 579 (Wyo. 2022) (quoting *Elec. Wholesale Supply Co., Inc.*, ¶ 27, 356 P.3d at 261).  The plaintiff must prove four elements:

> (1)  Valuable services were rendered, or materials furnished,
> (2)  to the party to be charged,
> (3)   which services or materials were accepted, used and enjoyed by the party, and,
> (4)  under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged.  Without such payment, the party would be unjustly enriched.

*Statzer,* ¶ 13, 517 P.3d at 579 (citation omitted).

[¶35]   The district court's order on summary judgment, and the parties' arguments on appeal, focus on the fourth unjust enrichment element.  The fourth element includes two separate requirements.  *Id.*, ¶ 14, 517 P.3d at 579 (citing *Jacoby v. Jacoby*, 2004 WY 140,

9

¶ 12, 100 P.3d 852, 856 (Wyo. 2004)). First, the plaintiff must prove the circumstances were such that the [defendant] was reasonably notified that the [plaintiff] expected to be paid. *Jacoby*, ¶ 12, 100 P.3d at 856 (citation modified). An "express demand for payment" is not required. *Redland*, ¶ 146, 288 P.3d at 1205. Second, the plaintiff must prove the defendant would be unjustly enriched if the plaintiff is not paid. *Jacoby*, ¶ 12, 100 P.3d at 856 (citation omitted).

[¶36] The parties agree that the material facts in this case are undisputed. No evidence exists that the money was conveyed to JHCR as a loan, other than Mr. Tallichet's own assertions, and the station's tax documents, which he alleges are evidence of a loan. Indeed, Mr. Tallichet concedes "he was the one who provided [the money] as a loan and accepted [the money] as loans." He also concedes the Board did not approve or review the tax documents he submitted prior to 2015.

[¶37] Whether the circumstances reasonably notified JHCR that Mr. Tallichet expected repayment hinges on the tax forms which Mr. Tallichet contends "ratified" his contributions as a loan. This Court, in an analogous case, explored the extent to which after-the-fact intentions were relevant to the notice requirement of an unjust enrichment claim. *Statzer*, ¶¶ 14-15, 517 P.3d at 579-80. In *Statzer*, the son, Lonnie, secured property from his mother and father for nominal consideration. *Id.*, ¶ 3, 517 P.3d at 577. Several years later, Lonnie's father passed away. *Id.*, ¶ 4, 517 P.3d at 578. The mother and Lonnie then exchanged letters discussing the conveyance where mother demanded payment for the property. *Id.*, ¶ 16, 517 P.3d at 580. Mother argued the letters created a genuine issue of material fact showing Lonnie was on notice that she expected payment for the property under the fourth element required to demonstrate unjust enrichment. *Id.*, ¶ 17, 517 P.3d at 580.

[¶38] This Court concluded the letters did not create a genuine issue of material fact as to whether the conveyance occurred under circumstances that reasonably notified Lonnie that mother expected payment for the property. *Id.* Noting the "after-the-fact" nature of the mother's demands, we determined the letters from 2019 had "nothing to do" with whether Lonnie was reasonably notified his mother expected payment for the property exchanged in 2015 and 2016. *Id.* Because Lonnie made a prima facie case by showing there was no evidence that he was aware mother expected payment for the land when the conveyance took place, and mother then failed to come forward with any evidence to the contrary, this Court affirmed summary judgment in favor of Lonnie. *Id.*, ¶ 19, 517 P.3d at 580.

[¶39] Here, the district court similarly found an absence of evidence indicating JHCR was aware that the money was to be paid back at the time the funds were conveyed to the station. As we have already noted, there are no facts or writings between the parties to document that the funds were provided as a loan at the time that the money was provided to JHCR. Like *Statzer*, Mr. Tallichet asks the Court to consider conduct after the transfer as evidence that JHCR was on notice that it needed to repay the money. We decline to do so, particularly where there is no evidence that the party charged with the alleged debt, JHCR,

10

was aware of the tax filings in question until after Mr. Tallichet unilaterally withdrew $81,848 from the station account in 2015.

[¶40] We have made clear that the fourth element of our analysis demands more than showing a party was unjustly enriched. *Statzer*, ¶ 18, 517 P.3d at 580; *see also, Jacoby*, ¶ 12, 100 P.3d at 856. We cannot accept that JHCR was on notice that repayment was expected where Mr. Tallichet: (1) started giving money to JHCR without Board notice; (2) admits he accepted the money as a "loan" on the station's behalf; and (3) offers no evidence that JHCR or its Board were aware of the station's subsequent tax filings until after his $81,848 withdrawal in 2015. These circumstances did not reasonably notify JHCR that Mr. Tallichet expected repayment for the money he provided to the station.

[¶41] We are also unpersuaded by Mr. Tallichet's argument that the district court was "in complete error" when it determined that the money given to the station was a charitable donation. The district court made no such finding. Instead, the court simply acknowledged the Tallichet family has "given extensive funds to the station as charitable donations," a fact Mr. Tallichet admits. This Court has considered the parties' history of conduct leading up to the benefit subject to an unjust enrichment claim. *See, e.g., Robinson*, ¶ 13, 564 P.3d at 1036 (discussing how the defendant had a history of paying plaintiff for the work she performed on defendant's ranch). But Mr. Tallichet offers no reason why his family's generosity supports the notion that JHCR was on notice that he expected repayment for his own monetary contributions to the station.

[¶42] Even so, unjust enrichment does not apply to every circumstance where one has benefited by another's detriment. *See* Restatement (First) of Restitution § 2 (1937) (stating the general rule that "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution"). Relevant here, unjust enrichment does not apply in the instance of a volunteer or officious intermeddler. *See Wyo. Irr. Co. v. Yarnell*, 223 P. 332, 332 (Wyo. 1924) (recognizing "circumstances indicating a gratuity" do not require restitution); *Teton Peaks Inv. Co., LLC v. Ohme*, 195 P.3d 1207, 1211 (Idaho 2008) ("The officious intermeddler rule essentially provides that a mere volunteer who, without request therefor, confers a benefit upon another is not entitled to restitution. This rule exists to protect persons who have had unsolicited benefits thrust upon them.") (citation modified); *see also,* Dobbs, *Law of Remedies*, § 4.9 (1993) (stating it is black-letter law that volunteers and officious intermeddlers cannot recover restitution for unsolicited benefits). Mr. Tallichet is not entitled to restitution because he made unsolicited contributions to JHCR and continued making those contributions in the apparent absence of a request from or agreement with JHCR.

[¶43] Mr. Tallichet has not demonstrated that JHCR was reasonably notified he expected repayment for his contributions to the station. The undisputed evidence indicates JHCR was not aware Mr. Tallichet considered the contributions a loan until after the Board

discovered he had repaid himself $81,848 from the station account. Because Mr. Tallichet has failed to demonstrate any material facts demonstrating he satisfies the fourth unjust enrichment element, we find the district court did not err when it granted summary judgment in favor of JHCR.

## CONCLUSION

[¶44]   JHCR would not exist but for Mr. Tallichet's vision and commitment to the station. In its earliest days, Mr. Tallichet was JHCR in that he was its founder, President, and a Board member. However, Mr. Tallichet willingly provided the station with money in the absence of any formalities or Board approval. After his initial unsolicited contribution, Mr. Tallichet only has the tax documents as evidence of his transfers, which he himself helped prepare and the Board did not review until much later.

[¶45]   The district court did not err when it concluded Mr. Tallichet's breach of an implied contract claim was barred by the statute of frauds. Although the district court incorrectly determined Mr. Tallichet's unjust enrichment claim was barred by the statute of frauds, we conclude Mr. Tallichet failed to establish any issues of material fact that would assist him in satisfying the fourth element of unjust enrichment.

[¶46]   Affirmed.